STANLEY et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 29, 1912.)

No. 3,601.

1. INDICTMENT AND INFORMATION (§ 125*)—FEDERAL STATUTE—DUPLICITY—CONSPIRACY.

That an indictment under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), for conspiracy to commit an offense against the United States, shows in charging overt acts that the completed offense charged as the object of the conspiracy was committed, does not render it bad for duplicity.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

2. INDICTMENT AND INFORMATION (§ 125*)—FEDERAL STATUTE—DUPLICITY.

The charging in a single count of an indictment under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), for conspiracy to commit an offense against the United States of more than one distinct and overt act, is not charging separate and distinct offenses, and does not render the indictment bad for duplicity.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§. 334–400; Dec. Dig. § 125.*]

In Error to the District Court of the United States for the Western District of Oklahoma.

Criminal prosecution by the United States against J. E. Stanley, A. J. Kline, and R. A. Porter. Judgment of conviction, and defendants bring error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Horace Speed (J. R. Cottingham, S. T. Bledsoe, and John Devereux, on the brief), for plaintiffs in error.

John Embry, U. S. Atty. (George F. Zimmerman, Asst. U. S. Atty., on the brief), for the United States.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. The grand jury of the United States District Court for the Western District of Oklahoma returned an indictment against plaintiffs in error, a copy of which embraces 37 pages of the printed record, and is too voluminous to be here set forth in full.

It, however, charges, in substance, that on the 14th day of March, 1904, within the county of Texas, state of Oklahoma, in the Western District of said state of Oklahoma, J. E. Stanley, whose more full name is to the grand jurors unknown, A. J. Kline, whose more full name is to the grand jurors unknown, R. A. Porter, whose more full name is to the grand jurors unknown, and W. T. Douglas, now deceased, whose more full name is to the grand jurors unknown, and divers other persons to the grand jurors unknown, hereinafter referred to as other conspirators to the grand jurors unknown, then and there being, did then and there, at and within said county and district, and within the jurisdiction of said court, unlawfully, willfully, corruptly, wrongfully, feloniously, and knowingly conspire, combine, confederate, and agree together to commit an offense against the United States; that is, to commit the acts made a crime and offense against the United States by section 5480 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3696), and the acts amendatory thereof, that is to say:

That said (naming conspirators) did there and then unlawfully, willfully, knowingly, corruptly, falsely, wickedly, and feloniously conspire, combine, confederate, and agree together, in devising a certain scheme and artifice to defraud various persons, then resident within the United States, to wit, to defraud Mary Lanigan, W. F. Garrett, D. C. O'Neil, Frank Saxton, J. L. Graham, W. D. Faulkner, Charles P. Johnson, W. L. Garvin, J. J. Macham, Matt Raichel, L. A. Wood, and W. E. Townsend, whose more full names are to the grand jurors unknown, and divers other persons to the grand jurors unknown, hereinafter referred to as other victims to the grand jurors unknown, of their money, to be effected through and by means of the post office establishment of the United States, by them the said (naming conspirators) opening and intending to open, under the style and firm name of the Southwestern Immigration & Development Company, with offices and headquarters at Guymon, Okl., correspondence and communication with said other persons (naming persons defrauded), and by inciting such other persons, to wit (naming persons defrauded), to open communication with them the said (naming conspirators), under the style and firm name aforesaid, by means of the post office establishment of the United States, which said artifice and scheme to defraud was as follows, to wit: That they the said (naming conspira-

tors) should and did associate themselves together, under the style and firm name of the Southwestern Immigration & Development Company, as the promoters of a new town, to wit, the townsite of Boise City, Cimarron county, Okl., as persons selling the town lots of said townsite, with the said J. E. Stanley as president, the said A. J. Kline as vice president and general manager, the said W. T. Douglas as treasurer, and the said R. A. Porter as general sales manager, of said company, and that they, acting under the style and firm name aforesaid, would open correspondence and communication with the said (naming parties defrauded) by means of the post office establishment of the United States, and incite said other persons, to wit (naming parties defrauded), to open communication with and to send to the Southwestern Immigration & Development Company at Guymon, Okl., and to open communication with and to send to the said (naming conspirators) applications to purchase, and large sums of money for the purchase of lots in the said town of Boise City, to wit, written applications for the purchase of lots in said Boise City, the location of said lots, respectively, to be determined at the grand opening at the price of $40 per lot, and to send with such applications $10 on the purchase price and $10 per month thereafter for each such lot until the full sum of $40 per lot was paid, by them the said (naming conspirators) falsely pretending in and through letters, packets, writings, circulars, pamphlets, advertisements, maps, and plats, to be deposited and carried in and delivered by the mails by means of the post office establishment of the United States, which said letters, circulars, packets, writings, pamphlets, advertisements, maps, and plats are too lengthy and voluminous and otherwise unfit to be set forth in this indictment, and knowingly, fraudulently, and falsely making and publishing through said letters, circulars, maps, plats, pamphlets, writings, and advertisements the false and fraudulent pretenses and representations following, to wit: That the said Boise City was owned in fee simple by the said Southwestern Immigration & Development Company; that the said Boise City was laid off in a square plat, composed of only one quarter section of land, to wit, the N. W. ¼ of section 15, township 3 N., of range 5 E., in Cimarron county, Okl. That in the center thereof a block of land had been reserved for the erection of a capitol or courthouse of Cimarron county. That all of said lots offered and to be offered for sale were within the exterior limits of the one quarter section of land, and were within four blocks of this courthouse square. That the said Boise City was the only town in said Cimarron county. That the said Boise City had secured the division point and Oklahoma shops for the new Panhandle Short Line, which is now under construction, 23 miles having been graded. (It then charged that other lines of railroad were being financed and would pass through said Boise City, and would give certain connections.) That there is a family on every quarter section in said county. That every quarter section of land within 25 miles of Boise City is occupied by a farmer. It also set forth representations as to various kinds of crops grown in the county. That, when the whole of said lots should be sold and payments therefor made, a grand opening

would be had at which the said lots would be apportioned **and** distributed to purchasers respectively according to some method to be agreed upon, and that the said Southwestern Immigration & Development Company would pay one full return fare for each five lots purchased of a representative of the purchasers, to attend the grand opening. That none of said lots were a greater distance from said courthouse site and the prospective business section of said town than the exterior limits of the said one quarter section of land. All of which said false and fraudulent pretenses and representations were to be made and published as aforesaid for the purpose of inducing purchasers who had not visited said Boise City or known the value of said lots to believe that said lots and all of them were well worth the price to be asked therefor, and to purchase the same.

Whereas, in truth and in fact, the said lots so to be offered for sale and to be sold would be of far less value than as so represented and not of the worth and value for which the same would be sold; and whereas in truth and in fact, as the said (naming conspirators) then and there well knew, the said Southwestern Immigration & Development Company did not and would not own said townsite of Boise City nor said land in fee simple, and that it was not and would not be so owned or held in fee simple by said (naming conspirators), or by either or any of them, or by any other person, persons, or corporation for them, or either of them, or for the said Southwestern Immigration & Development Company, or for the purchasers thereof; and whereas, in truth and in fact, they the said (naming conspirators) intended, as a part of said scheme and artifice to defraud, as they and each of them then well knew, to survey and plat into lots and blocks, and to sell, under the style and firm name aforesaid, as lots in said Boise City, the whole of the west one-half of said section 15, and that the first platting of said townsite into a square form, containing only one quarter section of said land, with a block reserved in the center thereof for the erection of a courthouse, would be for the false and fraudulent purpose of inducing purchasers of lots to believe that the lots selected or to be selected for them would necessarily be within that distance of the courthouse and business section of said Boise City, not greater than the limits of the said quarter section of land; that said plat would then and at all times be a false and fraudulent pretense and representation that the whole of said lots were within the exterior limits of said one quarter section, whereas, in truth and in fact, approximately one-half of the lots of said Boise City so intended to be sold upon the false and fraudulent representations aforesaid would be, and were, on the S. W. ¼ of said section 15, outside of the exterior limits of the one quarter section of land, and a greater distance from said courthouse block, and on account of such distance would be and were worth less as town lots and far inferior in value to the lots or any of the lots shown on said plat; and whereas, in truth and in fact, they the said (naming conspirators) then well knew there were then other towns in said Cimarron county, to wit (naming five towns); that Boise City had not then or at any of the times mentioned secured the division point and Oklahoma shops

for the new Panhandle Short Line, and no such road was then or at any of the times herein mentioned under construction; that no part thereof was then or at any of the times graded, and no such road had a charter to construct a line through any part of said Cimarron county. (It also negatives the allegations with regard to other roads and crops grown in county.) And there were not then or at any of the times mentioned a family on every quarter section of land in said county, but in truth and in fact the population of said county was then and at all times mentioned very small, the greater number of the quarter sections therein then and at all of the times mentioned had no families or inhabitants on them. Every quarter section within 25 miles of said Boise City was not occupied by a farmer, but in truth and in fact very few of such quarter sections were then or at any of the times mentioned occupied by farmers. That it was the purpose and intent of the said (naming conspirators) to sell all of the lots on said W. ½ of said section of land, to collect the payments therefor, and to divide said lots among the purchasers without having the grand opening and without giving the representative of said purchasers an opportunity to participate therein, and to fail, refuse, and neglect to pay the railroad fare of the representatives of said purchasers in attending the grand opening, or in coming to the place of the distribution of such lots, all of which said representations and pretenses were false and fraudulent and made and published by said (naming conspirators) in said letters, circulars, maps, plats, writings, and advertisements aforesaid, for the purpose of securing for themselves and for each other, under the style and firm name aforesaid, money from the sale of lots in said Boise City. The lots surveyed and platted on said W. ½ of said section 15 and the whole of said lots, except those abutting upon said courthouse square, were not and are not worth the prices for which they were so sold, and were not then, or at any time, of any value as town lots, all of which the said (naming conspirators) then and there well knew.

And the grand jurors do further present that said statements and representations so to be made by the said (naming conspirators) to the said (naming parties to be defrauded) were false, fraudulent, and untrue, and were to be made for the purpose and with the intent of deceiving and defrauding the said victims of their money and to be made in pursuance of said scheme and artifice to defraud, and to effect the object of said conspiracy, and for the purpose of enabling the said (naming conspirators) to obtain the possession of the money of all of the said victims, and thereupon convert the same to their own use and gain; and the grand jurors aforesaid, upon their oaths, do further find and present: That the said (naming conspirators), as a part of said conspiracy, and for the purpose of effecting the object of said conspiracy to defraud in the manner aforesaid, did, at the town of Guymon, in said district, on the 21st day of May, A. D. 1908, wrongfully, unlawfully, knowingly, and feloniously deposit and cause to be deposited in the post office establishment of the United States, at said town of Guymon, in said district, and within the jurisdiction of said court, for mailing and delivery through and by means

of the post office establishment of the United States, a certain letter and writing, which said letter and writing was then and there enclosed in a sealed envelope, postage paid thereon, and addressed to "Mrs. Mary Lanigan, Memphis, Tenn." (meaning Tennessee), which said letter and writing was in the words and figures following, to wit:

"Southwestern Immigration and Development Company.

"Boise City, a New Town in the New County of Cimarron, Oklahoma.

"J. E. Stanley, President.                                   W. T. Douglas, Treasurer.

"A. J. Kline, Vice Pres. and Gen. Mg'r.

"Lots $40.00, on Installments.

"Home Office:  Guymon, Oklahoma.

5/20/08.

"Mrs. Mary Lanigan, Memphis, Tenn.—Dear Madam:  Replying to your letter of 5/11 beg to advise that Boise City offers the best opportunity for safe conservative investment in the U. S. to-day, and you will make a big profit on your investment. If you can place any applications in the next few days we will allow a commission of $8.00 on all applications you place. All deeds will be issued on the day of the opening which will take place the latter part of July. In am sending you under separate cover a small package of literature and application blanks and if you have friends who want to get in forward their applications at once as the time is getting very short. Applications are coming in every day and lots will soon all be closed up.

"We have begun laying concrete side walks and by the date of the opening we will have everything in good shape ready for the opening and one of the best commercial centers in this section of the new state will spring up as if by magic.

"Assuring you that you have made a good investment that will bring you large returns and with best wishes for your success, I am,

"Yours very truly,                                             A. J. Kline.
"LK–AJK."

That said envelope and its contents were of and concerning the aforesaid artifice and scheme to defraud and to effect the object of said conspiracy, all of which they, the said (naming conspirators), then and there well knew. (Then followed charges of 26 other overt acts upon the part of defendants or some of them, each of which overt acts were charged to have been in pursuance of said conspiracy, and to effect the object thereof.)

Defendants demurred to the indictment, the demurrer was overruled, to which defendants excepted, a trial had, resulting in a conviction, and each of the defendants was sentenced to a term in the penitentiary, and the case is brought here for review.

[1] The assignments of error all relate to the sufficiency of the indictment. It is claimed that the indictment is duplicitous, as charging two separate and distinct offenses, namely, a conspiracy to defraud under section 5440 (U. S. Comp. St. 1901, p. 3676) and a scheme to defraud under section 5480, and hence two offenses charged in a single count of the indictment.

A reading of the indictment clearly discloses that its design and only purpose was to charge the defendants with the crime of conspiracy under section 5440. It is essential in an indictment for conspiracy to commit a crime against the United States to charge acts sufficient to show that the design of the conspiracy was to commit an offense against the United States. In this case the offense which the

defendants were charged with having conspired together with the intent to commit was to defraud under section 5480.

In Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667, it was said that in an indictment under section 5480 three matters of fact must be charged:

"(1) That the persons charged must have devised a scheme or artifice to defraud; (2) that they must have intended to effect this scheme by opening or intending to open correspondence with some other persons, through the post office establishment, or by inciting such other person to open communication with them; (3) that in carrying out such scheme such person must have either deposited a letter or package in the post office or taken or received one therefrom."

It was also said that:

"A conspiracy to commit such an offense must state a combination between the defendants to do the three things requisite to constitute the offense."

In the indictment under consideration, the charge is plain and specific that the defendants did—

"unlawfully, willfully, corruptly, wrongfully, feloniously, and knowingly conspire, combine, confederate, and agree together to commit an offense against the United States; that is, to commit the acts made a crime and offense against the United States by section 5480 of the Revised Statutes of the United States, and the acts amendatory thereof—that is to say, did then and there unlawfully, willfully, knowingly, corruptly, falsely, wickedly, and feloniously conspire, combine, confederate, and agree together in devising a certain scheme and artifice to defraud various persons," etc.

Here we have a specific charge of the defendants combining and agreeing together in devising a certain scheme and artifice to defraud. The nature and character of the scheme is then set forth with sufficient particularity to show that it was reasonably adapted to defraud, if carried out. It then charges that defendants intended to effect the scheme by means of the post office establishment of the United States by opening and intending to open correspondence with the persons to be defrauded, and by inciting the persons to be defrauded to open communication with the defendants by means of the post office establishment of the United States, and that in the use of the post office of the United States the defendants intended to deposit letters, circulars, etc., in the post office of the United States, and in the overt acts it is charged that letters, circulars, maps, etc., were at various times and on various dates deposited in various post offices of the United States for the purpose of delivery through the United States mails to effectuate the object of the conspiracy. So the indictment contains every essential element required by the statute, as stated by the court in Stokes v. United States, supra.

The fact that the indictment shows in charging overt acts that a completed offense was committed under section 5480 of the Revised Statutes does not render the indictment duplicitous. This question was fully considered and disposed of by this court in McConkey v. United States, 171 Fed. 829, 96 C. C. A. 501.

[2] It is further claimed that the conspiracy was a completed offense when the first overt act in pursuance of the conspiracy was had, and, as more than one overt act was charged, several offenses were

charged. The crime consists in the conspiracy to commit the offense. The overt act is no part of the offense of conspiracy, as was said in Ware v. United States, 154 Fed. 577, 84 C. C. A. 503, 12 L. R. A. (N. S.) 1053, 12 Ann. Cas. 233:

"The offense under section 5440 is the conspiracy, not the conspiracy and the overt act."

Or, as said in United States v. Britton, 108 U. S. 199–204, 2 Sup. Ct. 531, 534 (27 L. Ed. 698):

"This offense does not consist of both the conspiracy and the acts done to effect the object of the conspiracy, but of the conspiracy alone. The provision of the statute that there must be an act done to effect the object of the conspiracy merely affords a locus penitentiæ, so that before the act is done either one or all of the parties may abandon their design, and thus avoid the penalty prescribed by the statute."

The conspiracy is a continuing one so long as overt acts are committed in furtherance thereof. United States v. Kissel, 218 U. S. 601–607, 31 Sup. Ct. 124, 54 L. Ed. 1168. It therefore follows that the charging in a single count of the indictment for conspiracy of more than one separate and distinct overt act is not charging separate and distinct offenses.

It is further claimed that some of the letters and pamphlets, maps, etc., deposited by defendants in the United States mails, and which are charged as overt acts, were not of a character which would tend to further the scheme to defraud. Some of them standing alone by themselves would not perhaps enable the defendants to consummate the fraud, but each, we think, sufficiently relevant to constitute one step in effectuating the fraudulent scheme.

From a full consideration of the indictment we think a single offense only was charged. We are also fully convinced that defendants were well advised of the charge which they were called upon to defend against, and that the demurrer was properly overruled.

Finding none of the assignments of error well taken, the judgment is affirmed.