## ARNSTEIN et al. v. UNITED STATES.

(Court of Appeals of District of Columbia.   Submitted January 7, 1924.   Decided February 5, 1924.)

### No. 4025.

1. **Bail ⬅️74(1)—Criminal law ⬅️576(6)—Failure to return indictment within nine months authorizes discharge of bail, but does not bar prosecution.**

That an indictment was not returned within nine months from the time defendants were admitted to bail, as required by Code D. C. § 939, authorized a discharge of the bail, but did not bar the prosecution.

2. **Indictment and information ⬅️125(5½)—Court not required to strike down indictment, alleging more than one overt act.**

That an indictment for conspiracy is double, in that an overt act is charged on each of three dates in one count, is not a vice which requires the court to strike down the indictment.

3. **Conspiracy ⬅️37—Not merged in completed offense.**

A conspiracy to commit a crime is not merged in the completed offense.

4. **Indictment and information ⬅️10—That some illegal evidence was before grand jury does not require quashing of indictment.**

That there was some illegal evidence before the grand jury does not require the quashing of an indictment that has some competent evidence to support it.

5. **Criminal law ⬅️89—District of Columbia Supreme Court has jurisdiction of prosecution for conspiracy to commit crime; "District Court of United States States."**

The Supreme Court of the District of Columbia is a "District Court of the United States," within Penal Code, § 340 (Comp. St. § 10514), providing that the offense denounced by section 37 (Comp. St. § 10201) as to conspiracies to commit a crime, shall be cognizable in the District Courts of the United States.

6. **Conspiracy ⬅️28—Violation of District of Columbia Code "crime against United States."**

A violation of criminal sections of the District of Columbia Code held a "crime against the United States," within Penal Code, § 37 (Comp. St. § 10201), relative to conspiracies to commit crimes against the United States.

7. **Criminal law ⬅️1149—Indictment and information ⬅️121(1)—Overruling motion for bill of particulars within court's discretion.**

An order overruling defendant's motion for a bill of particulars is within the legal discretion of the trial court, and will not be reversed, in the absence of a showing of an abuse of that discretion.

8. **Criminal law ⬅️1169(2)—Error in excluding cross-examination, subsequently admitted, cured.**

Any error in excluding cross-examination in the first instance, concerning inducements made to a defendant to get him to testify for the prosecution, held cured by the subsequent admission of that testimony.

9. **Witnesses ⬅️269(2)—Cross-examination of government witness concerning stolen securities held improper.**

In a prosecution for conspiring to bring stolen stock into the District of Columbia, where a witness was called for the sole purpose of establishing that he had introduced a defendant, who was a government witness, to another defendant, in order to prove an illegal combination existed between those defendants, an attempt on cross-examination to show that the government witness stated that he had stolen securities with him which he wanted to dispose of, held improper.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. **Witnesses &#8658;388(9)—Proper foundation for admission of previous inconsistent statements not laid.**

Where defendant, who was a government witness, had made previous statements, but he was not asked what they were, and no offer was made to show in what particular they conflicted with his present testimony, *held*, that a proper foundation for the admission of the statements was not made.

11. **Witnesses &#8658;203—Statements to assistant district attorney privileged.**

Statements made to assistant district attorney in his official capacity, while investigating a crime, *held* privileged.

12. **Criminal law &#8658;829(9)—Refusing request as to presumption of innocence held proper, in view of charge given.**

A refusal to give an instruction that the presumption of innocence is legal evidence, and is one of the instruments of proof in favor of defendants, *held* not error, in view of a charge that defendants were presumed to be innocent, and the jury must view the testimony in the light of that presumption.

13. **Criminal law &#8658;829(1)—Request covered by charge need not be given.**

Where the court has fully and fairly covered a subject in its charge, it is not necessary to give a request dealing with the same matter in different language.

14. **Criminal law &#8658;814(12)—Request as to effect of good character denied, where only two defendants introduced character testimony.**

Where only two defendants produced witnesses who testified to their good character, request by all the defendants for instruction that evidence of good character must be considered along with the presumption of innocence, and the jury should not convict unless, in spite of both the evidence of good character and presumption of innocence, they were satisfied of defendant's guilt, *held* properly refused.

15. **Criminal law &#8658;814(12)—Request as to reputation producing reasonable doubt held abstract and too broad.**

Where only two of the defendants produced evidence of their good character, a requested instruction that the circumstances might be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing, *held* properly refused, as too broad and an abstract statement not applied to evidence.

Appeal from the Supreme Court of the District of Columbia.

Jules Arnstein, alias Nickey Arnstein, and others, were convicted of a conspiracy to bring into the District of Columbia stolen stock, and they appeal. Affirmed.

Certiorari denied 44 Sup. Ct. 454, 68 L. Ed. ——.

T. Morris Wampler and H. S. Barger, both of Washington, D. C., for appellants.

Peyton Gordon and William E. Leahy, both of Washington, D. C., for the United States.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

SMYTH, Chief Justice. The appellants were indicted under section 37 of the Penal Code (Comp. St. § 10201) for a conspiracy to bring into the District of Columbia stolen stock, in violation of section 836a of the District Code, as added by Act Dec. 21, 1911 (37 Stat. 45). They

were convicted, and they bring their case here, alleging error, which they say prevented· them from having a fair trial.

[1] Two of the appellants moved to discharge their bail because the indictment against them was not returned within nine months from the time they were admitted to bail, as required by section 939 of the District Code. The motion was overruled, and the appellants assign the action of the court in that regard as error. This section was construed by the Supreme Court of the United States in United States v. Cadarr, 197 U. S. 475, 480, 25 Sup. Ct. 487, 49 L. Ed. 842, 3 Ann. Cas. 1057. If the motion had been made before the indictment was returned, it would have been good; but, since this was not done, it was of no value unless the statute is one of limitations, and the Supreme Court, in the Cadarr Case, has ruled that it is not. The effect of statute upon the accused, said the court, is not that he shall be discharged from prosecution for the offense, but that his bail shall be discharged. The purpose of the statute is to control the prosecution by requiring action by the grand jury, not to finally bar all prosecution for the offense charged. After a person is discharged under the statute, the government is free to renew the prosecution. This is the meaning of the Cadarr Case as we understand it. The court did not say, nor does the Code section, that an indictment returned after nine months have elapsed shall be invalid; consequently there is no basis for contending that a prosecution on such an indictment is erroneous.

[2-4] Appellants urge that the indictment is double, in that an overt act is alleged on each of three dates in one count. This is not a vice which requires the court to strike down the indictment. Stanley v. United States, 195 Fed. 896, 902, 115 C. C. A. 584. Nor is the contention that the conspiracy is merged in the completed offense well taken. The liability for conspiracy is not removed by its success, "that is, by the accomplishment of the substantive offense at which the conspiracy aims," says the Supreme Court of the United States in Heike v. United States, 227 U. S. 131, 144, 33 Sup. Ct. 226, 229 (57 L. Ed. 450, Ann. Cas. 1914C, 128). See, also, Stanley v. United States, supra. If it be a fact that there was some illegal evidence before the grand jury, as claimed by appellants, that would not require a quashing of the indictment. United States v. Perlman (D. C.) 247 Fed. 158. The appellants do not claim that where the indictment has no competent evidence to support it.

[5] Section 340 of the Penal Code of the United States (Comp. St. § 10514) provides that the offense denounced by section 37 thereof shall be cognizable in the Circuit and District Courts of the United States. The Supreme Court of the District of Columbia is a District Court of the United States, within the meaning of section 340. Benson v. Henkel, ·198 U. S. 1, 13, 25 Sup. Ct. 596, 49 L. Ed. 919; United States v. Morse, 218 U. S. 493, 504, 31 Sup. Ct. 37, 54 L. Ed. 1123, 21 Ann. Cas. 782. Hence jurisdiction of the case was vested by law in the Supreme Court of the District of Columbia.

[6] Appellants assert that the indictment is insufficient, in that it fails to state an offense against the United States, for the reason that a .conspiracy to violate a section of the Code of the District of Colum-

bia is neither a conspiracy to commit an offense against the United States nor to defraud the United States. The assertion is without legal force. We have decided that a crime against the United States is committed by any person who violates either section 818 or section 858 of the District Code. Fletcher v. United States, 42 App. D. C. 53. See, also, Thomas v. United States, 156 Fed. 897, 84 C. C. A. 477, 17 L. R. A. (N. S.) 720. Since it is a crime against the United States to violate those sections, we see no reason for saying that it is not a crime against the United States to violate other sections of the same Code.

[7] It appears from a ruling of the court that a motion for a bill of particulars was made by defendants, and overruled. Such a motion is addressed to the sound legal discretion of the court (Rosen v. United States, 161 U. S. 29, 35, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Breese v. United States, 106 Fed. 680, 682, 45 C. C. A. 535), and there is no evidence of an abuse of that discretion; therefore we cannot say there was error in overruling it.

[8] One Gluck was a defendant with the appellants. He testified on behalf of the government. On cross-examination by counsel for the other defendants, for the purpose of discrediting his testimony, he was asked if he had not been beaten by New York police officers to induce him to testify against the other defendants; if he had not been promised immunity by one Myers from prosecution on certain charges pending against him in New York state; if he had not been promised by Mr. Dooling, assistant district attorney of New York, that, if he would testify in this case for the government, he (Dooling) would recommend that he be granted immunity, and that his recommendations would carry weight with the trial justice; and if he had not been coached by one Myers. None of this testimony was admitted at first, but after some discussion, and to quote the record, "the court admitted the above testimony upon defendants' assurance they would show Dooling and Myers assisted the district attorney's office here in the preparation of this case." Thereupon counsel interrogated the witness with respect to the matters just mentioned, and other things. The witness answered all of his questions in the negative. At the conclusion of his examination the court pointedly inquired of the witness if he had been promised immunity by anybody connected with the court or any other person, or that his punishment would be lessened if he gave testimony in favor of the government, to each of which questions he answered, "No." If there was any error in excluding the testimony in the first instance, it was entirely cured by what transpired afterwards, and appellants have no cause for complaint on that score.

[9] A witness was called for the sole purpose of establishing the fact that he had introduced Gluck to Cohn, one of the defendants, in order to prove the illegal combination which existed between Gluck and Cohn in the conspiracy. On cross-examination counsel attempted to show that Gluck told one Stall that he had stolen securities with him which he wanted to dispose of. This was not proper cross-examination. It had no tendency to contradict or explain what was brought out in chief, and therefore was properly excluded.

[10] Mr. Dooling was served with a subpœna duces tecum, issued on behalf of defendants, requiring him to produce written statements made to him by Gluck and signed by the latter. He appeared and stated that he had the statements with him, but claimed they were privileged because they were made to him in his official capacity as assistant district attorney of the county of New York, state of New York, in the course of an investigation conducted by him in connection with a matter then pending, and at the time he testified undetermined, in the criminal courts of New York county involving some of the defendants here. Thereupon the defendants stated that the purpose of asking for the written statements was to impeach Gluck. The court sustained the position taken by Mr. Dooling, and the statements were not produced.

The ruling of the court was right, for two reasons: The statements were not admissible for the purpose of impeaching Gluck, because the proper foundation therefor had not been laid. While Gluck admitted that he made a statement to Dooling which the latter afterwards read to him, and that he said to Dooling that part of it was untrue, the defendants did not ask him what the statement contained, nor did they offer to show in what particular it conflicted with anything which he had testified to in chief. It is true they said that they desired the statements for the purpose of using them to contradict what he had said; but they did not say that they would contradict him, or that they expected to contradict him by them. They were simply bent upon a tour of investigation, in the hope that they would find something which would aid them.

[11] In addition, the statements were privileged. The Supreme Court of the United States held that a communication made to a state's attorney in Illinois, by a person who inquired of him whether the facts communicated made out a case of larceny for a criminal prosecution, was absolutely privileged. The court cited with approval Worthington v. Scribner, 109 Mass. 487, 12 Am. Rep. 736, where it was held that, in an action for maliciously and falsely representing to the Treasury Department of the United States that the plaintiff was intending to defraud the revenue, the defendant could not be compelled to answer whether he did not give to the department information of supposed or alleged frauds on the revenue contemplated by the plaintiff. The principle laid down in that case, said the court, was that it is the duty of every citizen to communicate to his government any information which he has of the commission of an offense against its laws, and that a court of justice will not compel or allow such information to be disclosed, either by the subordinate officer to whom it is given, by the informer himself, or by any other person, without the permission of the government, the evidence being excluded, not for the protection of the witness or of the party in the particular case, but upon general grounds of public policy, because of the confidential nature of such communications. Vogel v. Gruaz, 110 U. S. 311, 316, 4 Sup. Ct. 12, 28 L. Ed. 158. To the same effect is In re Quarles and Butler, 158 U. S. 532, 535, 15 Sup. Ct. 959, 961 (39 L. Ed. 1080), where the court cites the Vogel Case with approval, and says that information such as was embodied in the statements made by Gluck to Dooling is a privileged and confiden-

tial communication, "for which no action of libel or slander will lie, and the disclosure of which cannot be compelled without the assent of the government." See, also, Elrod v. Moss et al. (C. C. A.) 278 Fed. 123, 127.

[12] It is contended that the court erred in refusing to give an instruction asserting that "the presumption of innocence is legal evidence and is one of the instruments of proof in favor of the accused." It is true that the Supreme Court, in Coffin v. United States, 156 U. S. 432, 460, 15 Sup. Ct. 394, 39 L. Ed. 481, used substantially that language in discussing the difference between the presumption of innocence and reasonable doubt, but that does not mean that every instruction on the subject must use it. In Agnew v. United States, 165 U. S. 36, 51, 17 Sup. Ct. 235, 241 (41 L. Ed. 624), counsel for the defendant, in a requested instruction, embraced the following language, taken in effect from the Coffin Case:

"This presumption is to be treated by you as evidence giving rise to resulting proof to the full extent of its legal efficacy."

And the court said it should not have been given, because it would have tended to obscure what had already been made plain. The phrase, while clear enough to a lawyer, would have been misleading to a jury. This is authority for the proposition that it is not always necessary, nor even permissible, in framing an instruction, to use the language of a court opinion on the subject.

[13] It is elementary that, when the court has fully and fairly covered a subject in its charge, it is not necessary to give, at the request of defendants, another instruction dealing with the same matter, but in different language. Agnew v. United States, supra. The court in the instant case gave to the jury an instruction relative to the subject we are discussing, which was as favorable as it should have been to the defendants. It said that they were presumed to be innocent; that they were not required to prove themselves innocent, or to put in any evidence at all upon that subject; that in considering the testimony the jury must view it in the light of the presumption that the defendants were innocent; that this presumption abided with them throughout the trial, until the evidence convinced them of defendants' guilt beyond a reasonable doubt and to a moral certainty; and that it was the duty of the jury, if possible, to reconcile the evidence with this presumption. In the Agnew Case, supra, a charge which the court approved was as follows:

"The defendant is presumed to be innocent of all the charges against him until he is proven guilty by the evidence submitted to you. This presumption remains with the defendant until such time in the progress of the case that you are satisfied of the guilt beyond a reasonable doubt."

This does not say that the presumption of innocence should be "treated as evidence," or that it "is one of the instruments of proof," as stated in the Coffin Case, supra, nor was it nearly as full as the instruction in the case before us. Yet the court said it was "quite correct."

[14] Two of the defendants only produced witnesses who testified to their good character. All the defendants requested an instruction to

the effect that evidence of good character must be considered along with the presumption of innocence, and that the jury could not rightfully convict them unless, in spite of both the evidence of good character and the presumption of innocence, the jury was satisfied beyond a reasonable doubt of their guilt. The law with respect to the presumption of innocence was covered, as we have seen, by the instruction of the court. That leaves only the element concerning good character to be considered. Manifestly the request should not have been granted, since it related to all the defendants, those with respect to whom there was no evidence of good character, as well as those with respect to whom there was. If given as drafted, it would have misled the jury.

[15] Complaint is made because the court refused a request to charge as follows:

"The court instructs the jury that the circumstances of a case may be such that an established reputation for good character would alone create a reasonable doubt, although without it the other evidence would be convincing."

A reasonable doubt with respect to whom? With respect to those who had not produced evidence of good character, as well as to those who had? The request is too broad. Besides, it is an abstract statement, not applied to the evidence in the case. The decisions of this court in Jones v. United States, 53 App. D. C. 138, 289 Fed. 536, and Egan v. United States, 52 App. D. C. 384, 287 Fed. 958, are not in point. In each there was but one defendant, and there was, therefore, no ambiguity with respect to the application of the request.

There are other assignments of error. We have considered them, and we find them to be without merit.

The judgment is affirmed.

Affirmed.

Petition for writ of error to Supreme Court of the United States denied February 16, 1924.