THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
CÉSAR EMILIO GARCÉS DORREGO, Defendant and Appellant.

No. 15773. Argued February 2, 1955.—Decided March 29, 1955.

Santos P. Amadeo, Charles H. Juliá and Esteban Susoni Lens for appellant. J. B. Fernández Badillo, Acting Attorney General, and Rafael L. Ydrach Yordán, Fiscal of the Supreme Court, for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

In the former District Court of Puerto Rico, Arecibo Section, the prosecuting attorney filed separate informations against César Emilio Garcés Dorrego, for the offenses of attempt to commit murder and carrying a prohibited weapon.[1] Both informations were jointly heard, the first before a jury which acquitted defendant and the second one, for carrying a weapon, by a court without a jury, which found defendant guilty and sentenced him to serve three months in jail and to pay costs.[2] From that judgment of conviction defendant appealed. In his brief, defendant alleges that the trial court erred "(1) in not allowing the attorney for de-

---

[1] The information for the crime of carrying weapons was based on § 1 of the former Act No. 14 of June 25, 1924 (Sess. Laws, p. 114), as amended by Act No. 47 of September 29, 1949 (Spec. Sess. Laws, p. 104).

[2] The fact that both cases were jointly heard and that the jury acquitted defendant for the crime of attempt to commit murder, does not mean that the judge was also bound to acquit him in the case for carrying a weapon. People v. Pacheco, 59 P.R.R. 504.

fendant to ask witness Antonio Acevedo Andújar, for the purpose of impeachment, whether he had signed any statement before the prosecuting attorney; (2) in not allowing defendant to ask the prosecuting attorney, Honorato Pandolfi de Rinaldis, for the purpose of impeaching the credibility of the witnesses of the People,. whether the information filed on December 19, 1950, and the one filed on June 12, 1951, were prepared on the basis of the information given to the prosecuting attorney by the witnesses whom he examined; (3) in not admitting in evidence the information filed by the prosecuting attorney on December 19, 1950, and which was dismissed in order to file a new information; (4) in having acted with passion and prejudice in weighing the evidence and in finding defendant guilty; and (5) in overruling the demurrer filed by him against the information, to the effect that the latter did not clearly state the essential facts of the crime charged and that the information charged more than one offense."

■■ Appellant's first contention is that the trial court erred in not allowing his attorney to ask witness Acevedo Andújar if he had signed any statement before the prosecuting attorney. Appellant believes that his rights were impaired by the refusal of the court to allow the question, since if that witness had answered in the affirmative he would have had the right to require the prosecuting attorney to produce the aforesaid statement in order to challenge the credibility of the former. Upon insisting that the question was pertinent, defendant cites the case of *People* v. *Escobar*, 55 P.R.R. 491, in which we said, at p. 502, the following:

"The judge was quite right in his statement that there was nothing before the court to show that the witness had made any statement before the district attorney. If the witness had in fact made any previous statement before the district attorney, and if that statement had been reduced to writing, there was nothing to prevent counsel from establishing that fact by obvious means, other than cross-examination. Later in the

same cross-examination, Conesa admitted that he had talked to the *Fiscal* but counsel did not ask whether his statement had been reduced to *writing* and did not renew the request for the production of any sworn statement that might have been made. *Cases may or may not arise in which the refusal of a district attorney to produce a sworn statement made before him, or the refusal of a district judge to compel such production, would be a sufficient ground for reversal. This is not such a case."* (Italics ours.)

Although it is true that the witness, Acevedo Andújar, admitted having made a statement before the prosecuting attorney, in the transcript of the evidence there is nothing to imply that there exists the slightest contradiction between that statement and the one given by him at the trial. *Cf. People v. Beltrán*, 18 P.R.R. 908. Of course, the fact that Acevedo Andújar appeared as one of the witnesses for the prosecution in a former information (for the crime of attempt to commit murder), which contained allegations which are not consistent with what he testified at the trial, is not sufficient to imply such contradiction. The mere fact that the witness had admitted having previously testified before the prosecuting attorney did not give the defense a right to require said official to produce that statement, since he had not laid the foundation for his request, as required by our case law. *People v. Coto*, 48 P.R.R. 143 and *People v. Ramírez*, 41 P.R.R. 742.[3] In the latter case we said that:

"A fourth assignment of error relates to the refusal of the court to read the previous declaration made to the prosecuting attorney by María Lassalle when this officer was investigating the facts of the alleged crime. *On the witness stand María*

---

[3] In the instant case it is unnecessary to determine if a prosecuting attorney can be compelled to exhibit to the defense a written statement which is in his possession, made by a witness at a preliminary hearing. See, however, *Castro v. González*, 58 P.R.R. 369, 378; *People v. Escobar*, 55 P.R.R. 491, 504; *People v. Coto*, 48 P.R.R. 143, 147; *Gordon v. United States*, 344 U. S. 414, 418; *Arnstein v. United States*, 296 Fed. 946; 156 A.L.R. 345, 351, 52 A.L.R. 207; 27 Cal. Jur., p. 157, § 130.

*Lassalle was never asked whether she made any inconsistent statement with her testimony at the trial. In no way was a basis laid for the supposed contradiction, even if the attorney was bound to produce his written copy of the statement made by the witness."* (Italics ours.)

The first error assigned, therefore, was not committed.[4]

■ On December 19, 1950, that is, on the same day in which the information for carrying a weapon was filed, the prosecuting attorney, Pandolfi de Rinaldis, filed another information against appellant for the crime of attempt to commit murder. This information was dismissed by the court at the request of the prosecuting attorney, who on June 12, 1951, filed a second information against defendant for the same crime of attempt to commit murder. The trial for that second information and the one for the crime of carrying a weapon, as we have already indicated, were jointly held. The trial court did not err in not allowing the defense to ask the prosecuting attorney whether the information of December 19, 1950, as well as the information of June 12, 1951 (both referring to the case of attempt to commit murder) were filed on the basis of the information given to him by the witnesses whom he examined.[5] Apparently, the question was meant to establish that the first information for that crime was filed on the basis of the testimony given before the prosecuting attorney by the witnesses of the prosecution. Defendant's intention was to show certain inconsistencies between the allegations contained therein and the testimony of the witnesses at the trial. In this manner the defense sought to impeach the witnesses' credibility. The question was immaterial, for

---

[4] In *Gordon v. United States, supra,* the United States Supreme Court concluded that the documents were in existence, were in possession of the government, and were contradictory to his present testimony at the trial. In view of that, the United States Supreme Court concluded that the lower court should have overruled the objections which the government advanced and ordered production of the documents. Here, however, the situation is different.

[5] See § 3 of the Code of Criminal Procedure.

even if it had been established that the original information was filed on the basis of the testimony of those witnesses, that information would not have been admissible to impeach their credibility. The defense could have established that the witnesses made contradictory statements either by presenting those written statements, or in any other manner, but it is evident that it could not prove it by means of an information filed and sworn to by the prosecuting attorney in the preparation of which the witnesses did not intervene. See 27 Cal. Jur. 157, § 130. A prosecuting attorney who, after filing an information, discovers a substantial defect therein, can and must request leave to amend the same. *People* v. *Muñoz*, 57 P.R.R. 212.

In view of the foregoing considerations, we do not believe that the court erred in not admitting in evidence the original information in the case of attempt to commit murder.

■■ It is a well-settled rule of this Court that the presentation of the weapon in evidence is not an indispensable requisite in cases of this kind, if there are other means of showing that defendant was carrying it. *People* v. *Guzmán*, 52 P.R.R. 444; *People* v. *Carrillo*, 51 P.R.R. 353; *People* v. *Sánchez*, 50 P.R.R. 689; *People* v. *Nieves*, 35 P.R.R. 49. Of course, when the weapon is not seized and therefore it is not presented in evidence, the proof should be clear and convincing. *People* v. *Rupizá*, 72 P.R.R. 694; *People* v. *Guzmán, supra; People* v. *Cartagena*, 37 P.R.R. 261.

■■ The evidence of the prosecuting attorney tended to prove that on the occasion of the Nationalist revolution of 1950, on the morning of October 31, 1950, a company of soldiers from the National Guard went to the city of Arecibo and parked their vehicles in front of the plaza; that the soldiers received orders to occupy positions and to fire into the air, which they did; that several witnesses saw defendant in a nearby alley, with a paper bag in his hands, carrying in it an object whose cylindrical barrel was showing in part; that with that object defendant made several shots,

whose detonations they heard; that the soldier Rafael Santos Tirado was wounded in the leg; and that although defendant was not immediately arrested after the shots, he was afterwards identified by the witnesses who saw him shooting. On that evidence the court could very well conclude, as it did, that the object which defendant had inside the paper bag was one of the firearms which is prohibited by law. The weighing of the evidence rests entirely in the sound discretion of the trial judge and said finding shall not be disturbed by us unless it is proved that the lower court acted with manifest error, prejudice, or partiality. *People v. Bastián*, 71 P.R.R. 789; *People v. Arteaga*, 70 P.R.R. 635; *People v. Lugo*, 70 P.R.R. 562; *People v. Piñero*, 68 P.R.R. 565; *People v. Rivera*, 58 P.R.R. 183; *People v. Pacheco*, 48 P.R.R. 584. A careful study of the transcript of the evidence fails to convince us that the trial court did not act according to law in weighing the evidence. See *People v. Brene*, 57 P.R.R. 138; *People v. Delerme*, 51 P.R.R. 503; *People v. Caro Brignoni*, 50 P.R.R. 691; *People v. Calderón*, 46 P.R.R. 857. Once the court concluded that defendant was unlawfully carrying a prohibited weapon it was bound to find him guilty of the crime charged. *People v. Blanco González*, 68 P.R.R. 862; *People v. Sánchez, supra.*

 Appellant is not right in maintaining that the information for carrying a weapon charged two offenses. In its pertinent part the information alleges that appellant "was carrying on his person a firearm, *revolver or pistol*, which is a deadly weapon, which then and there he drew, exhibited, and used in order to commit the crime of attempt to commit murder." It is evident that this language cannot be construed in the sense of charging defendant with the commission of two crimes.

 Neither is appellant right in sustaining that the information was insufficient, because it made reference to "a firearm, revolver, or pistol and that therefore he could not

determine against what charge he was going to defend himself." The contention is clearly frivolous. The revolver, as well as the pistol, is a firearm with which bodily injury may be caused. Although usually there is a difference between one and the other, in practice both may be used for the same purpose. *People* v. *Rupizá, supra,* p. 697. We do not see how defendant could be prejudiced by the fact that in the information it was not specified whether he was carrying a revolver or a pistol. According to the law it was enough to prove that he was unlawfully carrying any firearm or instrument with which bodily injury may be caused. See § 1 of Act No. 14 of June 25, 1924 (Sess. Laws, p. 114), as amended by Act No. 47 of September 29, 1949 (Spec. Sess. Laws, p. 104). Therefore, the trial court did not err in overruling the demurrer filed by defendant.

The judgment appealed from will be affirmed.

