## UNITED STATES v. CENTER VEAL & BEEF CO., Inc., et al. (three cases).

District Court, S. D. New York.

Dec. 29, 1944.

66

See also 61 F.Supp. 72.

John F. X. McGohey, U. S. Atty., of New York City (Irving Tick, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Herman Hoffman and Edward Raff, both of New York City (Herman Hoffman, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

The defendants herein have been charged in various counts of three Informations, filed in this Court October 23, 1944, with having violated the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and Revised Maximum Price Regulation No. 169, in selling beef and veal carcasses and wholesale cuts in excess of the wholesale prices fixed by the Regulation. Information No. C118—335 names the defendant, Center Veal & Beef Co., Inc., and Al Merlis as defendants, and contains 13 counts. Information No. C118—336 names the defendant, Center Veal & Beef Co., Inc., Al Merlis and Siegfried Hermann as defendants, and contains 5 counts. Information No. C118—337 names the Center Veal & Beef Co., Inc., Al Merlis and Nat Romanoff as defendants, and contains 29 counts. The defendants appeared and entered pleas of not guilty on October 26, 1944. On November 20, 1944, they served a notice of motion asking for "an order granting leave to the defendants to file a complaint in the Emergency Court of Appeals against Chester Bowles, Administrator, duly appointed and acting as Price Administrator under and pursuant to the Emergency Price Control Act of 1942, as amended, setting forth objections to the validity of Maximum Price Regulation No. 169—Beef and Veal Carcasses and Wholesale Cuts (issued pursuant to said Act), upon alleged violations of which the above entitled proceedings are based; and staying the proceedings herein during the period within which such complaint is to be filed and the pendency of all proceedings had with respect thereto; and for such other and further relief as may be just and proper."

This motion is based upon subdivision (e), which was added to Section 204 of the Emergency Price Control Act by the amendments of June 1944. The provisions of said subdivision are set forth in a footnote.*

Annexed to the notice of motion are affidavits of the individual defendants and

---

* "(e) (1) Within thirty days after arraignment, or such additional time as the court may allow for good cause shown; in any criminal proceeding, and within five days after judgment in any civil or criminal proceeding, brought pursuant to section 205 involving alleged violation of any provision of any regulation or order issued under section 2 or of any price schedule effective in accordance with the provisions of section 206, the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated. The court in which the

of their attorney. In the affidavit of Mr. Merlis he states that "There are three major groups of producers and sellers of meats and meat products in the country." One major group is made up of the so-called Big Four, which in addition to doing a slaughtering business sell "a vast variety of processed meats and by-products under highly advertised trade names." In a second group are the so-called independent slaughterers and packers doing substantially the same kind of a business as the Big Four but on a much smaller scale. The third group is known as the "non-processing independent slaughterers" and they "confine their activities to the slaughter and sale of fresh meat itself and derive no significant revenue from any other source."

The defendants have been indicted as wholesalers, not as slaughterers. But for reasons that will be hereinafter stated, it appears that the Center Veal & Beef Co., Inc., is for all practical purposes a department or selling agency of another concern, a so-called independent non-processing slaughterer, bearing the corporate name of Frank J. Murray Co., Inc. Revised Maximum Price Regulation No. 169 issued by the Office of Price Administration, pursuant to the Emergency Price Control applies to the operations of these defendants and of the Frank J. Murray Co., Inc.

Some of the purposes of Revised Maximum Price Regulation No. 169 (effective December 1942) were to fix prices at which various classes of slaughterers could sell beef and veal carcasses and wholesale cuts, and to permit the wholesalers to "add 75 cents per hundred-weight to the applicable zone price." If a wholesaler pays the slaughterer the price fixed by the Regulation, then the wholesaler's major concern is whether or not the 75¢ per cwt. mark-up is fair. That would be true of the defendant Center Veal & Beef Co., Inc., if it were an independent wholesaler. But to be entitled to the mark-up a wholesaler must show that it "does not own or control in whole or in substantial part, any slaughtering plant or facilities, and is not owned or controlled, in whole or in substantial part by another person who owns or controls in substantial part any slaughtering plant or facilities." §§ 1364.455(d) and 1364.469(d) of R. M. P. R. 169. In order to charge the extra 75¢ the wholesaler must file a statement showing that it is a genuine wholesaler and is not tied up to a slaughterer as a parent or subsidiary corporation, as an affiliate, or by any common ownership.

As to the above quoted provision on ownership, the Assistant District Attorney, in an opposing affidavit, states that the defendant Merlis in June 1943 made a sworn statement to the OPA as follows: "There is no connection between Frank J. Murray Co. Inc. and Center Veal & Beef except the fact that stockholders and officers of one corporation are also stockholders and officers of the other." However, further details are given in the affidavit of Albert

proceeding is pending shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203 (a). Upon the filing of a complaint pursuant to and within thirty days from the granting of such leave, the Emergency Court of Appeals shall have jurisdiction to enjoin or set aside in whole or in part the provision of the regulation, order, or price schedule complained of or to dismiss the complaint. The court may authorize the introduction of evidence, either to the Administrator or directly to the court, in accordance with subsection (a) of this section. The provisions of subsections (b), (c), and (d) of this section shall be applicable with respect to any proceeding instituted in accordance with this subsection.

"(2) In any proceeding brought pursuant to section 205 involving an alleged violation of any provision of any such regulation, order or price schedule, the court shall stay the proceeding—

"(i) during the period within which a complaint may be filed in the Emergency Court of Appeals pursuant to leave granted under paragraph (1) of this subsection with respect to such provision;

"(ii) during the pendency of any protest properly filed by the defendant under section 203 prior to the institution of the proceeding under section 205, setting forth objections to the validity of such provision which the court finds to have been made in good faith; and

"(iii) during the pendency of any judicial proceeding instituted by the defendant under this section with respect to such protest or instituted by the defendant under paragraph (1) of this subsection with respect to such provision, and until the expiration of the time allowed in this section for the taking of further proceedings with respect thereto."

Merlis, annexed to the present notice of motion, in which he states:

"It is important to bear in mind on this motion the relationship between, and the nature of, the operations of both the corporate and individual defendants herein, and Frank J. Murray Co. Inc., a slaughter house located in Chester, New York. Irmgard Hermann and I are the sole owners of the defendant Center Veal and Beef Co. Inc., while my wife and I are the only officers thereof. My wife is wholly inactive in the operations of that business. The other individual defendants, Romanoff and Hermann (or their nominal designees) and I own all of the stock of the Frank J. Murray Co. Inc., and are the sole officers thereof."

The Murray Company, according to the affidavit of defendant Merlis, "is engaged exclusively in the slaughter and sale of fresh beef and veal and the usual by-products thereof in unprocessed form. It does no processing of any such by-products. It is what is regarded in the trade and under the various applicable government regulations as a non-processing slaughterer * * *." Concerning the Center Veal & Beef Co., Inc., the Merlis affidavit states:

"While the defendant company is a separate corporate entity, it has been used almost exclusively as if it were a branch or division of the Murray Co., that is, as its wholesale sales outlet. Practically all of the beef slaughtered by the Murray Co. is sold by it to the Center Veal and Beef Co. Inc., which in turn resells at wholesale. The defendant company is, therefore, in effect merely the sales agency of the Frank J. Murray Co. Inc."

It appears therefor that under R.M.P.R. No. 169 the defendant, Center Veal & Beef Co., Inc., could not charge the 75¢ per cwt. mark-up on the price it paid the slaughterer. The ownership provision of the Regulation practically makes the defendant corporation a selling agency or department of Frank J. Murray Co., Inc., as defendants contend, and would give the Center Veal & Beef Co., Inc., a sound basis for arguing that it is subject to the Regulation in so far as the Regulation fixes prices for slaughterers, that it is vitally affected by the prices thus fixed for slaughterers.

The defendant, Center Veal & Beef Co., Inc., asserts that it did not file a "protest" in its own behalf with the OPA under § 203(a) of the Emergency Price Control Act, because so many others in the industry had done so, and that those other protests raised the contention that it was unfair to fix a maximum price for slaughterers if there in fact was no maximum price fixed for live cattle. This issue has been pending for some time before the Emergency Court of Appeals. It appears from defendants' affidavits herein that members of the legal division of the OPA recognized the "squeeze" to which the slaughterers were subjected, between the uncontrolled high level of cattle prices and the fixed ceiling on beef and veal. This was an especial hardship to the so-called independent non-processing slaughterers, who did not have an opportunity to recoup some of their loss by the prices they could get for "processed" meats and by-products.

To correct in part the inadequacies for this group of slaughterers a subsidy of 80 cents per cwt. live weight of cattle was provided October 26, 1943; but the non-processing slaughterers claim that this subsidy did not meet the situation because the price of live cattle was not satisfactorily controlled, even though a limit was placed on what the slaughterers could pay for live cattle.

The affidavit of Mr. Merlis also states that the "entire industry, for many months, has been anxiously awaiting the outcome of the various protest proceedings which have been pending before the Price Administrator and the Emergency Court of Appeals"; that "the objections made by the complainants in those proceedings were shared by and were equally available to all other members of the industry engaged in similar operations"; and that "it would have been a futile act indeed for us to have instituted separate protest proceedings while such proceedings were pending"; and that "protests filed by other non-processors as well as processor independent slaughterers have been held in abeyance pending the outcome of these proceedings before the Emergency Court of Appeals."

The reply brief of the defendants asserts that the Frank J. Murray Co., Inc., "recently filed" (I am informed it was on November 24, 1944) a protest with the OPA; and that the Price Administrator suggested withholding any action on it until twenty days after the decision of the Heinz case, infra, by the Emergency Court of Appeals, in view of the statement of the protestant that the facts in support of the objections were substantially the same as those pre-

sented in various pending cases, particularly the Heinz case. Heinz et al. v. Bowles, Price Administrator, Em.App., 149 F.2d 277. Whether or not the Murray protest was "timely" under § 203(a) of the Act, Tit. 50 U.S.C.A.Appendix, § 923(a), is a matter for the Price Administrator to determine.

The amendment of § 204 of the Act by adding thereto subdivision (e) (1) indicates the purpose of Congress to grant to one charged in a "criminal proceeding, brought pursuant to section 205 involving alleged violation of any provision of any regulation or order issued under section 2 or of any price schedule * * * leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated," if the defendant can satisfy the Court that there is a reasonable and substantial excuse for his delay in filing a protest and if the Court is satisfied that the objections to the Regulation are being "made in good faith."

The consequences to the defendant, if leave is not granted, are serious. The defendant loses the possibility of an amnesty or dismissal of the criminal proceeding, which is provided for in subdivision (e) (2) added to § 204 by June 30, 1944, amendment, from which I quote as follows: "If any provision of a regulation, order, or price schedule is determined to be invalid by judgment of the Emergency Court of Appeals which has become effective in accordance with section 204(b), any proceeding pending in any court shall be dismissed, and any judgment in such proceeding vacated, to the extent that such proceeding or judgment is based upon violation of such provision."

All I need decide on the present motion is whether the objections to be embodied in the complaint, which the defendant, Center Veal & Beef Co., Inc., asks leave to file with the OPA to the provisions of R. M. P. R. No. 169, are made "in good faith," and whether there is a "reasonable and substantial excuse for the defendant's failure to present such objection." Except for the contention of the Government that the defendant keeps false records of sales and sells at prices 50% in excess of the ceiling price, it would seem that the pendency undetermined of a number of similar protests by others in the industry would be "a substantial and reasonable excuse" for defend-

ant, Center Veal & Beef Co., Inc., not having filed a protest with the OPA under § 203 (a) of the Act, Tit. 50 U.S.C.A.Appendix, § 923(a), prior to the filing of the Informations herein.

On this motion the Government alleges in opposing affidavits that "there is a reasonable and substantial cause for defendant's failure to have instituted the protest procedure heretofore" and that "the defendants were more than happy to operate under the Regulation" because they operated under false and fraudulent invoices at prices greatly in excess of the ceiling prices. The Assistant District Attorney swears that: "The evidence adduced at the trials hereof will show conclusively that defendants did not merely sell at wholesale at over ceiling prices. The evidence will be that defendants issued false and fraudulent invoices containing the correct ceiling prices. However, in addition defendants compelled the purchasers to pay amounts ranging up to more than fifty per cent of the purchase price in cash over the ceiling prices fixed by the Regulation."

To that statement the defendant Merlis replies in an affidavit as follows: "As to the alleged issuance of 'false and fraudulent invoices' which, on page 2 of his affidavit, Mr. Fried states will be proved at the trial, I am advised that such evidence would not be material to the issues on our trial and this would not be admissible for the information herein charges only over ceiling sales. Surely, even if such charges were true, they could have no bearing on this motion."

Section 902(g) of the Act as Amended provides: "Regulations, orders, and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof." R.M.P.R. No. 169 contains a provision [§ 1364.406(a)] that: "The price limitation set forth in this Revised Regulation shall not be evaded, either by direct or indirect methods etc." Certain practices are specifically condemned in subd. (b). And § 1364.407(b) provides that: "Every person making a sale of any beef carcass, beef wholesale cut, veal carcass, or veal wholesale cut, processed product, or other meat item subject to the revised regulation, on or after December 16, 1942, in the course of trade or business or otherwise dealing therein, shall keep for inspection by the Office of Price Administrator for so long as the Emergency

Price Control Act of 1942, as amended, is in effect, complete and accurate records of each such sale, showing the date thereof, the name and address of the buyer and seller, the quantity, grade or grade and weight, of all beef carcasses, beef wholesale cuts, veal carcasses, veal wholesale cuts, processed products or other meat items subject to this regulation sold, and the price charged or received therefor."

If there were counts in the Information charging that the defendants had violated § 902(g) of the Act as Amended and §§ 1364.406 and 1364.407 of R. M. P. R. No. 169, by failing to keep accurate records of their sales and in fact keeping false and dishonest records, those charges would serve to refute defendants' "excuse" for failing to file a protest and would raise an issue as to the "good faith" of the defendants in filing objections to the maximum price provisions of the Regulation, which they now ask leave to file. I doubt that this Court could find that objections to the Regulation prices were being made "in good faith," if it were shown that the objector had been engaged in the fraudulent practice of billing customers at the Regulation ceiling prices while receiving the excess over the ceiling price in cash on the side. A common sense interpretation of the statute would require that the attribute of "good faith" should be denied to the protest of a violator engaged in such practices. If the defendant corporation has indulged in such practices, how could the defendant honestly support with its own records the objections it asks leave to file to the ceiling prices fixed by R. M. P. R. No. 169? Sec. 203(a) of the Act as amended; § 35 of the Revised Procedural Regulation No. 1; Rule 11(b) of the Emergency Court of Appeals, 50 U.S.C.A. Appendix following section 924. Good faith implies honesty of purpose. It has been defined in an English statute as "the doing of a thing honestly." See 28 C.J. p. 715 and cases therein cited in footnotes; also 35 C.J.S., Faith, p. 490.

But the difficulty here is twofold (1) that the allegation as to these illegal practices is made in general language in the opposing affidavit, with no specific supporting data as to any certain transaction; and (2) that there is no charge in any of the counts of the three Informations on file that the defendants kept false records of sales and in so doing violated the above mentioned provisions of the Act and Reg-

ulation, requiring them to keep true and accurate records of each sale. The Government still has time to file an additional Information making specific charges of the alleged practices involving the keeping of false records. The offense is a misdemeanor. Tit. 18 U.S.C.A. § 541 and § 205 (b) of the Emergency Price Control Act, Tit. 50 U.S.C.A.Appendix, § 925(b). The Statute of Limitations, Tit. 18 U.S.C.A. § 582, for the prosecution of the offense would be three years. In respect to an Information making any such charge, the defendants would hardly ask leave to object to the provision of the Regulation requiring them to keep honest records.

The Assistant District Attorney will be permitted to file a further affidavit on this motion setting forth the details of the alleged false records and over the ceiling payments, in respect to any transactions set forth in the various counts of the three Informations already on file. Then there will be something specific before this Court to which the defendants may reply, if they wish, and which the Court may then consider on the issue of "good faith" as hereinabove explained and in weighing the "excuse" advanced by the defendants for failing to file a protest at an earlier date. I think I should inquire further into those issues.

When the various amendments to the Emergency Price Control Act were before both Houses of the Congress in June of 1944, there was general criticism of the fact that the law as it then stood barred a person from challenging the validity of any Regulation of the Office of Price Administration unless the objection was filed within sixty days after the issuance of the Regulations or of any amendment thereto. It appeared to be the sentiment of both Houses that an alleged violator should not be thus foreclosed by the time limit. It was suggested in the House that if the action against the alleged violator was a civil one he should have the right to apply to the District Court for leave to file objections to the Regulation and be heard by the Emergency Court of Appeals. The Senate seemed to be more concerned with the criminal proceedings against an alleged violator of the Regulations; and the first proposals in the Senate were that within five days after the conviction of a violator he be permitted to make an application to the District Court for leave to challenge the validity of the Regulation by filing a

complaint with the Emergency Court of Appeals. The District Court, under the provisions of the Act, lacked the power to pass upon the validity of any Regulation of the OPA issued under the Act. That power was lodged with the Emergency Court of Appeals, because Congress feared that otherwise there would be 85 District Courts expressing their own views as to the validity of the Regulations and there would be an absence of uniformity of decisions, which was essential to the effective enforcement of the Regulations issued under a Price Control Act.

The Senate and House passed separate amendments on this point, involving the right to review the validity of a Regulation. When the Bill went to conference these differences were reconciled with the result that subdivision (e) of § 204, as it emerged in its conference form, applied to both civil and criminal proceedings. In reporting the conference form of the Bill to the House on June 21st, the Chairman of the House Conferees stated:

"We have given every man the right to test the constitutionality and the validity of the orders and regulations under which he may be charged. Heretofore the regulations of the O.P.A. were incontestable after 60 days. That might make for efficient administration but it is contrary to our conception of the rights of the American citizen. To say that he has a constitutional right but that he cannot assert it after a certain time is to virtually deny him that right.

"This act changed that provision. Now those charged with violations of the orders or regulations of the O.P.A. can question the legality of those orders at any time. If the defendant is brought into the district court of the United States by the Administrator and the district court has no authority to pass upon the validity of the orders and regulations of the O.P.A., that is entirely in the jurisdiction of the Emergency Court of Appeals. If it is a criminal case, within 30 days after arraignment the defendant can apply to the district court for a stay. He can file that complaint in the Emergency Court of Appeals and have a decision rendered upon the legality of the order he has been charged with violating, and can do that within 30 days after arraignment or within 5 days after final judgment."

There was strong objection to this amendment by the Office of Price Administration. In commenting on that fact, the Chairman of the Senate Banking Commission, when discussing the conference report, stated:

"The Price Administrator has expressed great concern lest the right accorded by this procedure be abused by defendants resorting to protests and leaves to complain as a means of deferring or even avoiding the trial of criminal cases and of staying the execution of judgment in civil proceedings. But the procedure provided in the amendment does not represent a regular method to be followed in enforcement cases. Rather, it is an exceptional procedure which has been made available to avoid the risk of injustice that existed under the original act under which a defendant who had excusably failed to file a protest within the strict time limits the act allowed, might be denied any opportunity to question the validity of the regulation which he was charged with violating. The remedial procedure prescribed by the conference committee is available only to defendants whose objections the courts find have been made in good faith, and not primarily for the purpose of delay. The committee is confident that the courts will be vigilant in administering the standard of good faith to deny stays to defendants who have not previously availed themselves of the unrestricted opportunity to protest but who have been violating regulations on the gamble that, if caught, they could then protest and secure stays of proceedings which would afford them a good chance to avoid trial or the execution of judgment."

The last sentence above quoted seems to apply to the situation of the defendant corporation, taking the charges in the Informations at their face value. The 47 counts of the three Informations filed October 23, 1944, charge 31 violations between January and June 1943; 6 between September and December 1943; 4 between January and March 1944; and 6 between July and September 1944, after subdivision (e) had been added to the Act by the June 1944 amendments.

The Congress has placed upon the District Court in which the criminal proceeding is pending, the duty of inquiring into the "good faith" of the objector. This Court, when passing upon defendants' motion, may inquire into the surrounding facts and circumstance under which the defendants' alleged violations occurred. Regardless of whether or not evidence of

false records would be admissible on the trial of the counts of the present Informations charging sales at over the ceiling prices (I think it would be admissible: Wigmore, Third Edition, § 215; 22 C.J. S., Criminal Law, § 683; United States v. Krulewitch, 2 Cir., 145 F.2d 76, at page 80), this Court, on a motion under § 204 (e) of the Act, may consider evidence of the practices of defendants in making false records of their sales, in determining the issue of "good faith".

In this case we have individual defendants as well as the corporate defendant. The individuals are named in the Informations apparently because, as officers or employees of the corporate defendant, they participated in the violations with which the corporate defendant is charged. The Assistant District Attorney will be granted one week after the filing of this opinion in which to serve and file further opposing affidavits as hereinabove indicated, which should show also the alleged participation of the individual defendants in the violations. The defendants may have one week thereafter to serve and file a reply thereto, if they are advised by their counsel to do so. The determination of defendants' present motion will be held in abeyance pending the submission of additional affidavits.