## UNITED STATES v. CENTER VEAL & BEEF CO., Inc., et al. (three cases).

District Court, S. D. New York.

Jan. 12, 1945.

John F. X. McGohey, U. S. Atty., of New York City (Irving Tick, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Herman Hoffman and Edward Raff, both of New York City (Herman Hoffman,

of New York City, of counsel), for defendants.

LEIBELL, District Judge.

On December 29, 1944, I filed an opinion in the above matter, 61 F.Supp. 65, in which I discussed the motion made by the defendants for "an order granting leave to the defendants to file a complaint in the Emergency Court of Appeals against Chester Bowles, Administrator, duly appointed and acting as Price Administrator under and pursuant to the Emergency Price Control Act of 1942, as amended [50 U.S.C.A.Appendix, § 901 et seq.], setting forth objections to the validity of Maximum Price Regulation No. 169—Beef and Veal Carcasses and Wholesale Cuts (issued pursuant to said Act), upon alleged violations of which the above entitled proceedings are based; and staying the proceedings herein during the period within which such complaint is to be filed and the pendency of all proceedings had with respect thereto; and for such other and further relief as may be just and proper." The "proceedings herein," above referred to, are based on three Informations containing forty-seven counts setting forth alleged violations of the aforementioned Maximum Price Regulation No. 169.

In the course of my opinion I reviewed the proceedings in Congress which resulted in the adoption of an amendment, subdivision (e), to Section 204 of the Emergency Price Control Act in June 1944. I stated:

"All I need decide on the present motion is whether the objections to be embodied in the complaint, which the defendant, Center Veal & Beef Co. Inc., asks leave to file with the OPA to the provisions of R.M.P.R. # 169, are made 'in good faith', and whether there is a 'reasonable and substantial excuse for the defendant's failure to present such objection'. Except for the contention of the Government that the defendant keeps false records of sales and sells at prices 50% in excess of the ceiling price, it would seem that the pendency undetermined of a number similar protests by others in the industry would be 'a substantial and reasonable excuse' for defendant, Center Veal & Beef Co. Inc. not having filed a protest with the OPA under § 203(a) of the Act, Tit. 50 U.S.C.A. Appendix, § 923(a), prior to the filing of the Informations herein."

The District Attorney in opposing the defendants' motions submitted an affidavit to the effect that the defendants not only had sold at over the ceiling prices but that they had issued "false and fraudulent invoices containing the correct ceiling prices" and that they "compelled the purchasers to pay amounts ranging up to more than fifty percent of the purchase price in cash over the ceiling prices fixed by the Regulation."

To that statement one of the defendants, Merlis, replied that he had been advised that "such evidence would not be material to the issues" and "would not be admissible for the Information herein charges only over ceiling sales." He added "Surely, even if such charges are true, they could have no bearing on this motion." I did not share that view and in my opinion I stated:

"I doubt that this Court could find that objections to the Regulation prices were being made 'in good faith', if it were shown that the objector had been engaged in the fraudulent practice of billing customers at the Regulation ceiling prices while receiving the excess over the ceiling price in cash on the side. A common sense interpretation of the statute would require that the attribute of 'good faith' should be denied to the protest of a violator engaged in such practices. If the defendant corporation has indulged in such practices, how could the defendant honestly support with its own records the objections it asks leave to file to the ceiling prices fixed by R.M.P.R. # 169? Sec. 203(a) of the Act as amended; § 35 of the Revised Procedural Regulation No. 1; Rule 11(b) of the Emergency Court of Appeals, 50 U.S.C.A.Appendix following section 924. Good faith implies honesty of purpose."

On the question of the alleged false records I also stated:

"The Assistant District Attorney will be permitted to file a further affidavit on this motion setting forth the details of the alleged false records and over the ceiling payments, in respect to any transactions set forth in the various counts of the three Informations already on file. Then there will be something specific before this Court to which the defendants may reply, if they wish, and which the Court may then consider on the issue of 'good faith' as hereinabove explained and in weighing the 'excuse' advanced by the defendants for failing to file a protest at

an earlier date. I think I should inquire further into those issues.

\* \* \* \* \*

"In this case we have individual defendants as well as the corporate defendant. The individuals are named in the Informations apparently because, as officers or employees of the corporate defendant, they participated in the violations with which the corporate defendant is charged. The Assistant District Attorney will be granted one week after the filing of this opinion in which to serve and file further opposing affidavits as hereinabove indicated, which should show also the alleged participation of the individual defendants in the violations. The defendants may have one week thereafter to serve and file a reply thereto, if they are advised by their counsel to do so. The determination of defendants' present motion will be held in abeyance pending the submission of additional affidavits."

On January 3rd there was delivered to my Chambers a letter from Herman Hoffman, the attorney for the defendants, from which I quote the following:

"I feel constrained to respectfully suggest that the Court, in its direction to the U. S. Attorney to submit affidavits setting forth more in detail the alleged factual violations by defendants, and affording the latter an opportunity to meet them by cross affidavits, overlooked one of the cardinal principles of criminal law: that the defendants cannot be called upon to submit proof of their guilt or innocence in advance of the trial, and without the opportunity of cross examination."

I replied to Mr. Hoffman's letter the following day, in part as follows:

"You did not have to make the motion at the time you did. Under the statute you can make it five days after a verdict of conviction. But since you have made it at this time you have presented to the Court the question of the 'good faith' of your clients in now objecting to the price regulation in question. The term 'good faith' means something, and the Chairman of the Committee of the Senate, which included the amendment in the Bill as reported by the conferees of both Houses, stated what he understood was the duty of the Court in considering this question of 'good faith' on an application such as you have made. There is nothing in the statute which requires me to take testimony on a motion of this kind, although I suppose I could, if sharp questions of fact are presented by the opposing affidavits. Neither side has requested any oral examination of witnesses. Your clients are not being compelled to submit replying affidavits to whatever the Government may include in the additional affidavits which it may now submit. But you may do so, if you see fit. This motion is not the same as the trial of a criminal case, as you must have realized when you made the motion in advance of any trial.

"As I read subdivision (e) (1) as added to Section 204 of the Emergency Price Control Act by the amendment of June 1944, your clients may, if their present motion is denied, renew it within five days after judgment of conviction, if they are convicted. You may withdraw your motion, if you see fit. Apparently you decided that you should make your motion before the trial and not after the trial. If the motion were made after a judgment of conviction, the objections you raise in your letter of the 3rd certainly would have no basis whatsoever. I do not think it was the purpose of Congress to prevent the Government from offering proof on the 'good faith' issue, where a defendant makes his motion in advance of the trial. I see no reason for changing any part of my memorandum of December 29th, 1944."

Mr. Fried, the Chief Attorney, Food Enforcement Unit of the Office of Price Administration, Metropolitan Operating Office, pursuant to the leave granted by the Court, submitted an affidavit on January 4th, in which he states:

"The evidence in the possession of the United States Attorney will show conclusively that defendants placed the ceiling prices of the commodities sold on their records and invoices but, in fact, compelled their purchasers to pay an additional consideration above the ceiling price. Their fraudulent practices were varied. The patterns adopted by defendants were in some cases to collect the invoice price by check and, as stated, the additional amount in cash. In other cases defendants would sell and deliver one commodity and invoice another commodity with a higher ceiling price to make up the illegal price. In still a third class of cases defendants would sell one commodity, invoice that at the ceiling price, include on the invoice items which were never sold or delivered to the purchasers but paid for by them.

"The proof will be that in Information C–118–335, wherein Center and Merlis are the defendants, the transaction was handled by Merlis personally, that he set the illegal price, issued the false invoice and accepted the illegal consideration; that in C–118–337, wherein Center, Merlis and Romanoff are the defendants, they personally did one or more of the illegal acts in concert; and in C–118–336, wherein Center, Merlis and Hermann are the defendants, Merlis and Hermann committed the illegal acts."

Mr. Fried's affidavit then recites in considerable detail what the proof will be in respect to Count One of Information C–118–337, which names the Center Veal & Beef Co., Romanoff and Merlis as defendants in 29 separate counts; what the proof will be on Count One of Information C–118–335, which contains 13 counts and names Center and Merlis as defendants; and what the proof will be on Count One of Information C–118–336 which names Center Veal & Beef Co., Merlis and Hermann as defendants and contains 5 counts.

I received on January 11th a reply affidavit made by Herman Hoffman, the attorney for the defendants. In the opening paragraph he says:

"I am of counsel to the defendants herein and respectfully submit this affidavit in connection with the determination of this Court in its opinion, dated December 29th, 1944, requiring the Government and the defendants to file further affidavits herein."

The statement contained in that sentence is incorrect. There was nothing in my opinion of the 29th which required the Government to file further affidavits, and certainly as to the defendant it was made crystal clear that they would be given a week's time in which to serve and file a reply to the Government's affidavit "if they are advised by their counsel to do so."

The second sentence in Mr. Hermann's affidavit is as follows:

"I assume, from a reading of the entire opinion that, subject to consideration of the matters to be presented in such affidavits, this Court has concluded that the defendants have satisfied the conditions prerequisite to the relief sought upon this motion."

That assumption is unfounded if the entire opinion is read. I suggested that the Government file a further affidavit, because the statements made in Mr. Fried's first affidavit as to the keeping of false records, were too general. If I was to give them consideration, I felt that they should be more specific. The whole tenor of my opinion was that if the records were false then there was lacking both the "good faith" and the "reasonable and substantial excuse for the defendant's failure to present such objection" to the Regulation in a protest at an earlier date.

I think counsel misconceives the purpose of the Amendment, when he states in his affidavit:

"All considerations, therefore, point to the fact that it was intended that the issue of 'good faith' should not only be determined in a proceeding entirely independent of the main trial, but by reference to issues wholly unrelated to the defendant's guilt or innocence of the main charges."

The Chairman of the Senate Banking Committee, at the time the conference report in relation to the proposed amendment (subdivision (e) of Section 204) was before the Senate, explained the purpose of the procedure outlined in the amendment. He said:

"The Price Administrator has expressed great concern lest the right accorded by this procedure be abused by defendants resorting to protests and leaves to complain as a means of deferring or even avoiding the trial of criminal cases and of staying the execution of judgment in civil proceedings. But the procedure provided in the amendment does not represent a regular method to be followed in enforcement cases. Rather, it is an exceptional procedure which has been made available to avoid the risk of injustice that existed under the original act under which a defendant who had excusably failed to file a protest within the strict time limits the act allowed, might be denied any opportunity to question the validity of the regulation which he was charged with violating. The remedial procedure prescribed by the conference committee is available only to defendants whose objections the courts find have been made in good faith, and not primarily for the purpose of delay. The committee is confident that the courts will be vigilant in administering the standard of good faith to deny stays to defendants who have not previously availed themselves of the unrestricted opportunity to protest but who have been violating regulations on the gamble that, if caught,

they could then protest and secure stays of proceedings which would afford them a good chance to avoid trial or the execution of judgment."

█ In my opinion of December 29th I wrote:

"The last sentence above quoted seems to apply to the situation of the defendant corporation, taking the charges in the Informations at their face value. The 47 counts of the three Informations filed October 23, 1944, charge 31 violations between January and June 1943; 6 between September and December 1943; 4 between January and March 1944; and 6 between July and September 1944, after subdivision (e) had been added to the Act by the June 1944 amendments."

And I expressed the view that on a motion under Section 204(e) of the Act the Court before whom the motion is made "may consider evidence of the practices of defendants in making false records of their sales, in determining the issue of 'good faith.'" It was not the intention of Congress that motions under Section 204 (e) (1) should be considered in a vacuum, without any consideration of the manner in which defendant had conducted its business or the extent and nature of the violations contained in the indictment or information. If that were so, then the Government would be denied its most effective means of showing lack of "good faith" on the part of the defendants, and the Courts could not "be vigilant in administering the standard of good faith."

█ From a consideration of the entire record before me on the motions of these defendants, I have concluded that the motions should be denied on the merits.