## UNITED STATES v. ROSENFELD et al.
### No. 316.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

Reargument Denied April 1, 1932.

Benjamin Algase, of New York City (Sidney Lindner, of New York City, of counsel), for appellants.

George Z. Medalie, U. S. Atty., of New York City (Louis Mead Treadwell and Joseph Francis Finnegan, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The indictment charged two individuals, Rosenfeld and Nachman, and two corporations organized and controlled by them, with use of the mails in a scheme to defraud, and, in the final count, with a conspiracy so to do. In broadest outline the scheme involved the obtaining of money from numerous small investors by inducing them through false and fraudulent representations to subscribe for stock in Independent Bancontrol Corporation, and to pay for the same on the installment plan. The other corporation, Bancontrol Underwriters, Inc., was the fiscal agent of the Independent in selling stock of the latter. A force of salesmen was organized and given instructions by the individual defendants. Stock was sold in minimum units consisting of two shares of $10 preferred stock and one share of $5 common stock for a price per unit of $33, of which $8 was to be paid down and the balance in small monthly installments. Some $93,000 were collected upon subscriptions totalling about $170,000, before the corporations were petitioned into bankruptcy after an existence of less than two years. The jury found all the defendants guilty upon the conspiracy count and upon six of the mailing counts; on six other mailing counts they were acquitted. This appeal challenges the judgment of conviction upon (1) the alleged insufficiency of the evidence; (2) an alleged variance between the indictment and the proof; (3) alleged errors in the court's charge; and (4) erroneous rulings in the course of the trial.

To prove that the stock was sold upon false and fraudulent representations, the government relied chiefly upon the testimony of several stock salesmen and of numerous investors whom they had induced to subscribe for the stock. The credibility of these witnesses was for the jury, and, if the jury believed them, there was ample proof that the defendants had instructed the salesmen to represent, and that they had represented, to the investors, that the Independent Bancontrol Corporation was to engage in the business of making small loans to wage-earners, like the "industrial banking" of the Morris Plan, and that none of the funds would be used for any other purpose, but would be kept intact on deposit when not needed for making such small loans or for the purchasing of small loan companies. Such representations were false. The defendants did nothing of the kind; on the contrary, except for a few unimportant and unsuccessful efforts, they made no attempt to acquire a small loan business, but as early as November, 1929, began to invest the funds obtained from subscriptions in a stock brokerage account in the name of the Independent Bancontrol Corporation. By April, 1930, they began to trade on margin and continued buying stocks both outright and on margin with resultant losses of more than $20,000. During this time they were asserting, both through their stock salesmen and personally, if certain of the subscribers are to be credited, that not a penny of the corporate funds was invested in Wall Street. It is true that the prospectus prepared by the defendants contained a statement that "the corporation intends to participate in the ownership of securities and bonds of meritorious established industries, banks * * * and other financially sound corporations." But there was testimony that not all the salesmen were informed of the existence of this provision, and some who made inquiry about it were told that such investments were to be made only in the event that the small loans business developed to a point where the surplus funds of the corporation could no longer be profitably invested in it. Moreover, the subscribers who testified relied upon what the salesmen told them and never saw the prospectus so far as appears. The proof justified a finding that the defendants represented that the funds collected would be used for small loan banking only, while in fact they were being used for speculation in securities. This alone was enough to prove the fraudulent scheme. Perhaps the defendants' plan did not start with "high finance" in mind, but it so developed while they were collecting subscriptions and using the mails to carry out their scheme; so it is quite immaterial whether it started otherwise. Nor need we consider the misrepresentations as to

the withdrawal and borrowing privileges of the subscribers or as to the payment of all operating expenses out of the $8 paid down on the $33 unit price, though proof was also given of these misrepresentations. The contention that the evidence was insufficient to sustain the verdict is without merit.

▇▇▇ Equally unsubstantial is the argument that there was a fatal variance between the indictment and the proof because the defendants were convicted only on counts relating to mailings subsequent to the date when the defendants were proved to have begun to speculate on margin. This proves, it is urged, that the jury took the opening of the margin account as the dividing line between guilt and innocence and convicted the defendants of a fraudulent scheme, not because they invested funds in stocks, but because they speculated on margins, although the misrepresentation charged in the indictment was that the funds would be used only in the small loan business. A jury is not obliged to convict on all counts, and courts are not at liberty to surmise why some counts were found proved and others not. The buying of stocks on Wall Street whether outright or on margin was contrary to the represented purposes of the business, and the proof of purchases on margin was entirely competent under the allegations of the indictment. There was no material variance.

Closely akin to the point just discussed is criticism of the court's charge in respect to the reference to trading on margin. But we find no defect in the charge in this respect, nor indeed was any exception taken to it.

▇▇▇ The main attack upon the charge relates to the court's reference to the financial statement submitted to a stockholders' annual meeting on May 26, 1930. Although the indictment did not allege that this financial statement was a misrepresentation which formed a part of the scheme to defraud, the court's charge with respect to it is construed by the appellants as a direction that, regardless of whether the proof as a whole showed the alleged scheme to defraud, the jury must convict if they believe the evidence relating to the falsity of this balance sheet. Our recent decision in Pelz v. United States, 54 F. (2d) 1001 (January 4, 1932), is relied upon to establish the error of making guilt turn upon an objective test of intent. It is by no means clear that the charge is subject to the objectionable construction which the appellants now place upon it, for, following the language criticized, the jury were told that they could not convict "unless all the essen-tial elements of the indictment are proven to you beyond a reasonable doubt." At the worst the charge is possibly ambiguous; but no exception was taken to it at the time. In the main the charge was entirely correct, and we think we should misapply the rule which permits us to disregard the absence of exceptions to do so here. The error is far from clear, and we are convinced of the justness of the verdict.

▇▇▇ Complaint is made of the court's refusal to require the district attorney to turn over for inspection by defense counsel and possible use on cross-examination certain written statements made by government witnesses prior to trial. The statements which a party takes from his witnesses preparatory to trial can be material only in so far as they contradict what the witness has said on another occasion or has testified to on the stand. No such contradiction was asserted. To allow an opposing party to use such statements merely for exploratory purposes in the hope that he may find some contradiction of the witness' testimony is a doctrine with which the writer of this opinion has little sympathy. But we need not now decide whether such a rule should prevail in the federal courts. The statements are not incorporated in the record, and we have no means of knowing whether the appellants lost anything by the refusal. We cannot say that they contained anything contradictory, nor can we assume that the refusal to require their production was a substantial prejudice. If the appellants meant to press the point, they were obliged to bring the papers before us in some way.

Finding no substantial error, we affirm the judgment.

### On Petition for Reargument.

### PER CURIAM.

▇▇▇ By petition for reargument on the point last above discussed in our former opinion, the appellants call to our attention the fact that the written statements demanded from the district attorney were marked as exhibits for identification, but were not printed in the record on appeal pursuant to a stipulation. We were in error in stating that the papers were not before us, but our conclusion that the District Court committed no error in excluding them remains unchanged. What the defendants really asked here was a discovery of papers at the trial. Section 724 of the Revised Statutes (28 USCA § 636) gives a right to discovery in a civil case. Assuming that it could be stretched to cover criminal pro-

ceedings, although we do not think it could, it would be necessary to satisfy the conditions on which discovery depends. See Carpenter v. Winn, 221 U. S. 533, 31 S. Ct. 683, 55 L. Ed. 842. It is not enough merely to demand an inspection of papers; the party demanding discovery is confined to documents necessary to the establishment of his own case. This demand was merely to fish among the prosecution's papers. Even if discovery were ever permissible in a criminal case, this would be unwarranted. See Arnstein v. United States, 54 App. D. C. 199, 296 F. 946, 950.

The petition is denied.