## UNITED STATES v. KRULEWITCH.

### No. 387.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1944.

John E. Mack, of Poughkeepsie, N. Y., and Samuel Rubin, of New York City, for appellant.

Edward C. Wallace, of New York City, and James B. M. McNally, U. S. Atty., of New York City, for appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

■ Krulewitch appeals from a judgment of conviction for transporting a woman in interstate commerce for purposes of prostitution. He raises six points: (1) That the testimony was insufficient to sustain a verdict; (2) that the judge refused to control the conduct upon the stand of the principal witness; (3) that the accused was not allowed to inspect a written statement of that witness, which the prosecution had procured; (4) that a part of the testimony of another witness was incompetent and highly prejudicial; (5) that the judge erred in his charge as to the proper use of that witness's testimony; (6) that the accused did not receive a fair trial. The sixth point is no more than a summary of the preceding points, and we do not find it necessary to discuss it independently; and the fifth point turns out to be moot as will appear. The substance of the testimony, most of which was that of a professional prostitute, named Joyce, was as follows. Shortly after Joyce had made the acquaintance of the accused, he took her to Chicago where he tried to get her to live in a brothel. She refused and came back to New York, where later she and the co-defendant, Sookerman, lived in various apartments where they practiced prostitution; and this was known to the defendant. In October, 1941, the accused suggested to her and Sookerman that they should go to Miami and should there ply their calling. They agreed and the accused took them to Miami with him and installed them in a hotel which he had leased and where they "worked," paying over their earnings to him. Later Joyce became ill and again returned to New York. There is no question as to the sufficiency of the testimony; indeed, the accused says in his brief that if Joyce's testimony "were to be believed * * * there was doubtless evidence from which the jury might find the

defendant guilty." True, he continues that her testimony was "inspired by a venomous hatred and jealousy—evidence from a contaminated source which, by every recognized test of credibility, should have been rejected"; but that is plainly a consideration, not to be addressed to us, but to the jury; and we may pass at once to the supposed errors in the conduct of the trial.

■ The first point which we need discuss is the failure of the judge properly to control Joyce upon the stand. She was undoubtedly an unruly and extremely unstable person, she had been wayward from the outset of her career, and had early served a term in a reformatory. Upon her direct testimony she told a connected enough story which, as we have seen, left nothing to be supplied, if it was believed. Her cross-examination was detailed, long and repetitious: it occupies 75 pages of the printed record. During the course of it she repeatedly broke out into more or less violent retorts and insults to the cross-examiner; at times she refused to answer his questions; at times she declared that she had already answered them. On the whole, however, there is no reason to suppose that the accused lost the benefit of anything that could have been extracted from her by sterner handling than the judge adopted. It is true that he dealt very gently with her, and at no time became peremptory; but we are by no means satisfied that in this he did not show the better judgment in all the circumstances. He was faced with a hysterical woman, probably never well balanced emotionally, and in any event enervated by a life from girlhood of carousing and debauch. Subjected to long and persistent questioning into a past full of conflicting emotions, her low threshold of control was soon overflooded and nothing much could be done to prevent her outbreaks. To put pressure upon such a woman was quite as likely to provoke a complete collapse as it was to bring out whatever truth she might have been concealing. We are disposed to accept his way of guiding her ungoverned moods and caprices; he was on the spot, and certainly it does not appear that more would have been accomplished by the course which the accused now affects to advocate.

■ This disposes of all the points raised except two, which, as they have persuaded us that the case must be retried, we will state at some length. Joyce had been questioned at her home by an agent of the Federal Bureau of Investigation on December 8, 1941, thirteen months before the indictment was filed; she signed a written statement of five pages which the agent took away with him, and which completely exculpated the accused, saying that she and Sookerman had gone to Miami of their own choice, to "work" there on their own account; that the accused had had nothing whatever to do with their going, although he had gone down later and had seen them; and that the witness had never had any illicit relations with him. During the course of her cross-examination, the accused's counsel, who had apparently learned of this paper, demanded the privilege of inspecting it with a view to cross-examining her upon it, and presumably of putting it in evidence to impeach her. The judge reserved decision, and did not decide the point until the last day of the trial. The prosecution had by then produced the paper for the judge to see, and he had read it; but he refused to allow the accused to see it. It was marked and sealed, and is a part of the record on appeal.

It is one thing to say that an accused shall in advance of trial have inspection of statements of witnesses taken by the prosecution in preparation of its case; it is another to deny him the benefit of so much of such statements as is shown to be inconsistent with the witnesses' testimony on the stand, and would impeach them. If such evidence is to be suppressed after its relevance has been established, it must be because the circumstances of its origin make it a privileged communication. There is indeed authority for saying that a statement made in confidence to a prosecuting officer disclosing a crime is so privileged. Vogel v. Gruaz, 110 U.S. 311, 4 S.Ct. 12, 28 L.Ed. 158; In re Quarles and Butler, 158 U.S. 532, 535, 536, 15 S.Ct. 959, 39 L.Ed. 1080. We may also assume arguendo that the doctrine extends to statements made to an investigating officer. Scher v. United States, 6 Cir., 95 F.2d 64, affirmed 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151. Indeed, for reasons which will appear, we could in the case at bar even assume (although certainly that is doubtful) that a statement procured by such an officer, which—like the statement here in question—declares that no crime has been committed, is also privileged. This is true because in any event it must be a condition upon the continuance of any such privilege that the prosecution—its possessor—shall

not adduce testimony touching the subject matter communicated. Indeed, that is a general principle as to all privileged communications. When their possessor chooses to bring into the light the transaction to which the communications relate, he may no longer suppress the communications themselves. The justification for the privilege lies not in the fact of communication, but in the interest of the persons concerned that the subject matter should not become public. The Court of Appeals of the District of Columbia does indeed appear to have decided otherwise in Arnstein v. United States, 54 App.D.C. 199, 296 F. 946, 950; but the point that the prosecution had surrendered its privilege by calling the witness, does not appear to have been brought to the court's attention; and in addition the accused had in any event failed to lay the proper foundation for using the statement.

We hold therefore that the statement was competent to contradict the testimony of Joyce; and, except for what we shall say in a moment, if the accused had offered it in evidence, the error of excluding so much of it as contradicted her testimony—a matter to be determined by the judge—would have been apparent. That the accused did not do; on the, contrary, he continued to demand an inspection of it, which was a different matter. It would have been proper to refuse that demand except for the fact that the statement was not competent until Joyce had been questioned as to whether she had not said what it purported to declare, and had been given an opportunity to admit that she had. Conrad v. Griffey, 16 How. 38, 46, 47, 14 L.Ed. 835; The Charles Morgan, 115 U.S. 69, 77, 78, 5 S.Ct. 1172, 29 L.Ed. 316; Chicago, M. & St. P. R. Co. v. Artery, 137 U.S. 507, 519, 11 S. Ct. 129, 34 L.Ed. 747; Bennett v. Hoffman, 2 Cir., 289 F. 797. But since the accused could not ask her these necessary questions in preparation for admission of the statement, it was proper for him to demand an inspection, and the refusal was erroneous.

So far as we can find, the question has never been ruled in a federal court. In United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 233, 234, 60 S.Ct. 811, 84 L. Ed. 1129, the court used language which seems to indicate that, even when the witness has used a paper on the stand to refresh his recollection, it is not necessarily erroneous to deny the other side an inspection; and when he has used it only in preparing for his examination, there appears to be authority for holding that no inspection is ever to be allowed. Lennon v. United States, 8 Cir., 20 F.2d 490, 493; Little v. United States, 8 Cir., 93 F.2d 401, 407. But neither of these situations is like that at bar, where the competence of the document appeared without inspection, and inspection was necessary only to fulfill a procedural condition to its admission. In that situation inspection loses its character as a prying into the preparation of the prosecution, and becomes merely a means of releasing evidence pregnant with importance in ascertaining the truth. In Heard v. United States, 8 Cir., 255 F. 829, 832, for example, the court reversed a conviction, partly at least, because the judge below had limited the accused in the use of a statement like that at bar; and in United States v. Rosenfeld, 2 Cir., 57 F.2d 74, 76, we intimated that if certain statements, which had been taken from witnesses in 'preparation for the trial, had been shown to contradict their testimony, they should have been made available to the defense. While therefore it must be admitted that the question has. not been settled in federal criminal procedure, there is good authority in other jurisdictions supporting our view. In New York for example the law is so, People v. Walsh, 262 N.Y. 140, 149, 150, 186 N.E. 422; People v. Schainuck, 286 N.Y. 161, 165, 166, 36 N.E.2d 94. So probably it is in Connecticut. State v. Hayes, 127 Conn. 543, 18 A.2d 895, 922. That there are contrary decisions is true, but justice so plainly points in one way that we cannot hesitate to choose as we have indicated. Moreover, although Joyce on her cross-examination swore that the statement she had given the agent was false throughout, such testimony has never been regarded as an equivalent of the contradictory statement itself. People v. Schainuck, supra, 286 N.Y. 161, 165, 36 N.E.2d 94; Wigmore § 1037. That it should not be in the case at bar a perusal of the document amply proves. Finally, we cannot disregard the error. One jury had already disagreed. The statement professed to be a complete account of Joyce's dealings with the accused, and it left him scatheless. Joyce herself was shown to be to the last degree untrustworthy; and we surely cannot say that this circumstantial story so totally at variance with her testimony, might not have created enough doubt to turn the scales in favor of the accused.

The other question is of the admission of a part of the testimony of one, Mary Smith—also a prostitute—who swore that the accused had lived off her earnings while she was so engaged. So far, her testimony was competent upon the issue of his purpose in taking Joyce to Florida, for it fell within the well-established doctrine that other instances of similar conduct are competent to prove intent (or purpose) upon the occasion for which the accused is on trial. Neff v. United States, 8 Cir., 105 F.2d 688. Cohen v. United States, 5 Cir., 120 F.2d 139. Had she said no more, no doubt would be raised. But she was asked to tell her relations with the accused from the outset, and she said that he had first employed her as a domestic servant in his apartment, and that a short time after she came to live there he had one night raped her. It was after this prelude, she said, that he had persuaded her to become a prostitute for his profit. Had the indictment been for transporting Joyce to enjoy her favors, this evidence would have been clearly competent under the rule we have just mentioned. But it was not and rationally it does not in the least tend to prove that a man is living from the earnings of a harlot that he has raped another woman. Nor does it even add to the probability that the raped woman also became a harlot and that the man lived off her earnings. Rather the opposite, for a relationship which begins with so profound an outrage upon a woman's feelings is not apt to end in such complaisance. If the testimony is to be defended, it must be on the theory that the incident was only part of a continuous story, which as a whole was admissible; and that if it chanced, as it did, that the unbroken tale disclosed a separate crime, that did not make it inadmissible. Thompson v. United States, 1 Cir., 144 F. 14, 7 Ann.Cas. 62. In short, that if evidence is relevant to prove one crime, it does not become inadmissible because it also proves another. Such is indeed the law; yet, here as always, the competence of evidence in the end depends upon whether it is likely, all things considered, to advance the search for the truth; and that does not inevitably follow from the fact that it is rationally relevant. As has been said over and over again, the question is always whether what it will contribute rationally to a solution is more than matched by its possibilities of confusion and surprise, by the length of time and the expense it will involve, and by the chance that it will divert the jury from the facts which should control their verdict. Wigmore §§ 39(2), 42. That part of Mary Smith's testimony which we are considering did not, as we have said, even tend to prove the accused's purpose in transporting Joyce; but if it had, it was much more likely to divert, than to enlighten, the jury. For, even though there can be squeezed from it some drop of confirmation of her story that she "worked" for him, it was at a cost more than commensurate with the dangers it involved; it greatly tended to muddle the jury, and to lead them to convict the accused because he was in general so loathesome. A man is monster enough who lives off the earnings of harlots, but one who adds to cupidity the violation of young girls living under his roof (Mary Smith was only seventeen or eighteen) is so depraved that decent people will find it difficult to distinguish between the features which combine to make the whole revolting and detestable figure.

The prosecution seeks to support the ruling by the decision of the Eighth Circuit in Ellis v. United States, 138 F.2d 612, but that case, on the contrary, turns upon precisely the distinction we have already suggested. The indictment was for transporting girls, not for purposes of prostitution, but for purposes of lechery; and the testimony complained of was that the accused had violated other girls at the point of a pistol. Under the usual doctrine it was competent to show these instances of a lecherous disposition in proof of a similar disposition at the time of the transportation, just as in the case at bar it was competent to show that the accused had lived upon Mary Smith's earnings. The case would have been in point only if the court had allowed as proof of a purpose to transport the girls for lechery, evidence of living in other cases off the earnings of prostitutes.

Judgment reversed; new trial ordered.

CLARK, Circuit Judge (dissenting).

Admission of evidence of other criminal activity of an accused to show intent is "a matter in which the trial judge should be allowed a wide range of discretion," as we recently held in a case to my mind much more extreme than this, United States v. Feldman, 2 Cir., 136 F.2d 394, 399, affirmed Feldman v. United States, 64 S.Ct. 1082.

Use of such evidence in prosecutions under the Mann Act is a commonplace. See, e. g., Neff v. United States, 8 Cir., 105 F.2d 688; Cohen v. United States, 5 Cir., 120 F.2d 139; United States v. Pape, 2 Cir., 144 F.2d 778. Whether evidence of a single act of rape somewhat remote in time should be admitted to show intent to engage in white slave traffic need not be decided here, although Ellis v. United States, 8 Cir., 138 F.2d 612, seems to go that far and the discussion in Bracey v. United States, App.D.C., 142 F.2d 85, as well as the shrewd observation in 2 Wigmore on Evidence, 3d Ed. 1940, § 357, that there is "altogether too much hesitation in receiving such evidence" in connection with sexual offenses and that there is "room for much more common sense," tends to suggest admissibility. Here, however, Mary Smith's testimony was much more directly relevant. I believe it was properly admitted (under the limitations as to its use which the trial judge most carefully stated and restated to the jury), both as part of an entire story which was itself clearly admissible and as having independent corroborative value on that story.

It is always confusing, if not dangerous, to try to make a part of what is essentially only one transaction alone admissible; efficient precoaching of a witness to force understanding of such limitations may very well seem indicated, lest the jury be given the impression that something is being concealed from it, for reasons certainly not obvious to a layman. On the ground that such partial concealment is improper, I believe the testimony here admissible. Further, however, it is directly pertinent as explaining how this witness came to engage in a life of vice upon what otherwise are likely to seem too inadequate suggestions, too indirectly connected with the accused; and it shows a degree of ruthlessness in debauchery, and probably also in sinister purposiveness, which, as a common-sense matter, does directly bear upon his intent to make use of women as he chose. The real objection to the evidence appears to be that it is so convincing against the defendant—hardly a sound reason for excluding it. That the story is capable of easy fabrication is not an answer; that presents an issue for the jury, and in judging the witness' veracity the jury is entitled to consider, inter alia, the extent to which she presses her story.

The other important holding here, requiring the prosecution to deliver to the accused a statement from a witness of which it had made no use, seems the making of new, even if desirable, law, for prior federal holdings are pretty clearly against the requirement. Arnstein v. United States, 54 App.D.C. 199, 296 F. 946, 950, certiorari denied 264 U.S. 595, 44 S.Ct. 454, 68 L.Ed. 867; United States v. Rosenfeld, 2 Cir., 57 F.2d 74, certiorari denied Nachman v. United States, 286 U.S. 556, 52 S.Ct. 642, 76 L.Ed. 1290; United States v. Cotter, 2 Cir., 60 F.2d 689, certiorari denied Cotter v. United States, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; Lennon v. United States, 8 Cir., 20 F.2d 490, 493; Little v. United States, 8 Cir., 93 F.2d 401, 407, certiorari denied 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105, rehearing denied 303 U.S. 668, 58 S.Ct. 756, 82 L.Ed. 1124; Boehm v. United States, 8 Cir., 123 F.2d 791, 805, 806, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200, rehearing denied 315 U.S. 828, 62 S.Ct. 794, 86 L.Ed. 1223. Compare United States v. Marino, 2 Cir., 141 F.2d 771, 774. In United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 235, 60 S.Ct. 811, 84 L.Ed. 1129, dealing with a somewhat similar question of use of Grand Jury minutes, the Supreme Court refused to disturb the discretion of the trial judge. These cases, indeed, seem to me to state a rule more strict than is necessary to find no error here, where, as will be pointed out, the defendants had the full benefit of the *fact* of conflict in the witness' statements, and would get merely additional emphasis from the document itself. Able state courts appear divided. Thus, delivery seems required in New York, which treats the federal rule as contra, People v. Walsh, 262 N.Y. 140, 186 N.E. 422; People v. Schainuck, 286 N.Y. 161, 36 N.E.2d 94, while the contrary appears to be held in Ohio, State v. Rhoads, 81 Ohio St. 397, 91 N.E. 186, 27 L.R.A.,N.S., 558, 18 Ann. Cas. 415, and perhaps New Jersey, State v. Simon, 113 N.J.L. 521, 174 A. 867, 875, and the matter appears to rest in the discretion of the trial court in Connecticut, State v. Hayes, 127 Conn. 543, 18 A.2d 895, 922 (upholding refusal of inspection). Judge Yankwich says, "Discovery in criminal cases finds no sanction in federal law," 3 F.R.D. 209, 215. And it is to be noted that the first draft of Federal Criminal Rule 18 for discovery where "not priv-

ileged" was later changed in the second draft to papers "obtained from or belonging to the defendant or constituting evidence." Even in civil actions, where there would normally seem much less reason for hesitation, considerable protest has been made against discovery of matters developed in preparing one's own case. Cf. 7 Federal Rules Service 965 and authorities cited.

Even if the rule is desirable, it may be a question how far error should be found against a trial judge who has carefully followed the previously existing rule, particularly where, as here, it is at least most improbable that his ruling at all affected the result. The rule may be made quite appealing if the situation is viewed in stark blacks and whites; of course, a prosecutor cannot be justified in withholding evidence demonstrating that his important witness is a liar. Probably few trial judges would go that far anyhow, even if there are prosecutors who would so abuse their office. On the other hand, an absolute rule that all material concerning a witness, from the time he first denies any knowledge of any matter under investigation down to the time he decides to talk, must be at the disposal of the accused seems neither necessary nor desirable. Is not the better course the one indicated in the Socony-Vacuum case, that control should rest largely in the discretion of the trial judge, who does have the over-all duty of seeing that a fair trial is had?

Here the discretion of the trial judge was carefully and, I believe, wisely exercised. The material witness had been subjected to the most lengthy cross-examination by both this accused and his codefendant and had become hysterical and rather offensive in her conduct, although the repetitive questions for the codefendant were an extreme test of patience. At any rate, she freely admitted that she had given a statement to the government agent in conflict with her present testimony, wherein she had exonerated this accused and particularly the woman codefendant—in fact the more appealing of the two here under prosecution, now already serving her sentence while her copartner gets yet another trial. This witness had been discredited, therefore, as much as was possible; delivery up of the statement would have added no new factor, but would undoubtedly have simply added pages more to the record of bickering of the kind already had ad nauseam. The circumstances suggest the

necessity of upholding, not constricting, the trial court's control of such a situation. There is no question of the weight of the evidence against the accused. I think his trial was fair and his conviction just.