**UNITED STATES v. GORDON et al.**

No. 10439.

United States Court of Appeals,
Seventh Circuit.

May 14, 1952.

Rehearing Denied June 7, 1952.

a fatal variance exists between the proof and the indictment; (4), defendants were unduly limited in cross-examination; and (5), the court erred in charging the jury.

We deem it unnecessary to comment at length on the proof adduced in support of the convictions. It is sufficient to say that, viewing the evidence, as this court must, in the light most favorable to the government, the jury was completely justified in returning the verdicts, and all motions challenging the sufficiency of the proof and its alleged variance with the indictment were properly overruled. Also, assuming *arguendo* that counts I and III were defective in that they failed to allege the value of the goods unlawfully possessed, the conviction and resultant judgment should still stand, absent prejudicial error, for the verdict and sentences, being general, are supported by counts II and IV. Claassen v. United States, 142 U.S. 140, 147, 12 S.Ct. 169, 35 L.Ed. 966; Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; De Jianne v. United States, 3 Cir., 282 F. 737.

Among the salient essential facts are the following. On July 10, 1950 a large quantity of camera film was stolen from an interstate shipment which had, as its origin, Rochester, New York and, as its destination, Chicago, Illinois. On July 20 and 27, 1950, in Chicago, certain portions of the film were observed in the possession of Gordon and MacLeod, being loaded into an automobile owned by James I. Marshall of Michigan. This man, accompanied by one Swartz, now deceased, then drove the car, loaded with film, from Chicago to Detroit. There a part of the merchandise was disposed of; the balance was eventually recovered. All four were charged with participation in the criminal undertaking. Marshall waived indictment and, on August 14, 1950, entered a plea of guilty to an information before the District Court in Detroit. Swartz and the two appellants were jointly indicted in the Northern District of Illinois. Later the charges against the deceased Swartz were dismissed.

George F. Callaghan, Maurice J. Walsh, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Richard E. Gorman, Asst. U. S. Atty., Chicago, Ill., for appellees.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants were indicted on four counts, I and III of which averred their unlawful possession of goods stolen while in interstate commerce, in violation of 18 U.S.C. § 659, and II and IV, that they caused the property mentioned in I and III to be transported further in interstate commerce in violation of 18 U.S.C. § 2314. The jury found both defendants guilty, whereupon judgment entered, imposing upon each a sentence of ten years. This appeal followed.

Defendants assert that, (1), counts I and III are insufficient in law; (2), the proof is insufficient to support the verdict; (3),

Appellants' primary contention is that of alleged undue limitation imposed on their cross-examination of Marshall. While other proof tending to establish guilt of defendants was introduced, there can be no doubt that Marshall, an admitted accomplice, was an important witness. His testimony unequivocally established possession of the stolen film in Gordon on July 20 and in MacLeod on July 27, for he testified that on those dates the two defendants directed him and Swartz to the location of the stolen property and assisted in loading it into his automobile, which he then drove from Chicago to Detroit. Marshall was peculiarly the character of witness requiring the exercise of the most extended freedom of the right of cross-examination. Greenbaum v. United States, 9 Cir., 80 F.2d 113.

The trial court recognized this and extended extreme liberality to defendants in their efforts to weaken the witness' story. They were allowed to indulge in the all exploratory cross-examination suggested in Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. However, in the course of the cross-examination, defendants elicited from Marshall, the information that, following his arrest by agents of the Federal Bureau of Investigation on July 28, 1950, he had made a statement concerning the details of the crime, in which he admitted he had in no way implicated either defendant. Furthermore, he admitted having later made four or five additional statements to the F. B. I. between that date and August 25, 1950. These statements varied from each other, he said, in some degree, and it was not until the last one, on August 25, that he, as he testified, in any way connected defendants with the undertaking. Upon evoking this information, defendants asked the court to "compel the government to produce that statement" (referring to the first one,) and "for the production of these statements," (referring to all of them). The court denied the requests.

The argument concerning this action upon the part of the trial court gives rise to several questions: Did the defendants take proper steps to bring about production of the evidence; does Rule 17(c) of the Federal Rules, 18 U.S.C., providing for the issuance of a subpoena duces tecum exclude other methods of securing production of documents; if the procedure adopted by defendants was proper, was it within the discretion of the trial court in such a situation as is presented here to refuse to order production of such documents, and certain subsidiary questions.

Rule 17(c) providing for a subpoena duces tecum does not of itself answer any of these inquiries, for it does not in so many words exclude other procedure. Rule 26 admonishes us to proceed in accord with the principles of the common law, in the light of reason and experience. Some federal courts have held that when production of pertinent documents in the possession of the United States Attorney is requested, it is the duty of the court to compel the production. Examples are Boehm v. United States, 8 Cir., 123 F.2d 791, certiorari denied 315 U.S. 800, 62 S.Ct. 626, 86 L.Ed. 1200; Asgill v. United States, 4 Cir., 60 F.2d 776, 779; U. S. v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A.L.R. 337; U. S. v. Toner, D.C.E.D.Pa., 77 F.Supp. 908, 917, reversed on other grounds, 3 Cir., 173 F.2d 140, 143. Cf. Bundy v. U. S., D. C.Cir., 193 F.2d 694; Marin v. U. S., 6 Cir., 10 F.2d 271. Some of these cases were decided before the Criminal Rules of Procedure were promulgated and some of them after that date.

Other courts have held that it is not always erroneous for the court to refuse to order production of such documents. In Boehm v. U. S., 123 F.2d 791 at page 805, 806, the court said: "The trial court's refusal to compel the production of statements made by the government's witnesses before other witnesses on occasions other than on the pending trial manifestly affected no constitutional right of appellant." See also U. S. v. Toner, D.C., 77 F.Supp. 908, reversed on other grounds in 3 Cir., 173 F.2d 143; Goldman v. U. S., 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; Marin v. U. S., 6 Cir., 10 F.2d 271; Chemical Specialties Co. v. Ciba Pharmaceutical Co., D.C., 10 F.R.D. 500; U. S. v. Rosenfeld, 2 Cir., 57 F.2d 74; Carpenter v. Winn,

221 U.S. 533, 31 S.Ct. 683, 55 L.Ed. 842; Bundy v. U. S., D.C.Cir., 193 F.2d 694; Little v. U. S., 8 Cir., 93 F.2d 401, certiorari denied 303 U.S. 644, 58 S.Ct. 643, 82 L.Ed. 1105, rehearing denied 303 U.S. 668, 58 S.Ct. 756, 757, 82 L.Ed. 1124; Chevillard v. U. S., 9 Cir., 155 F.2d 929. Many courts have announced that it is only when the witness uses the document while on the witness stand to refresh his memory that the right to compel production exists. Lennon v. U. S., 8 Cir., 20 F.2d 490; Morris v. U. S., 5 Cir., 149 F. 123.

■ However, in view of our conclusion, further consideration of this procedural question is unnecessary to a correct disposition of the alleged error. Thus, admitting for the purpose of this decision that issuance of a subpoena was not a necessary condition precedent to the court's power to compel production of the documents requested, we have left for disposition the crucial question of whether it was reversible error to deny the request here. We think the rationale of the authorities as we read them leads to the conclusion that on this record the court committed no error, certainly no prejudicial error, in refusing to require the government to produce the statements. In the first place, defendants made no adequate showing that the documents were in the possession of counsel for the government then before the court. Even had they been, their production was proposed, insofar as the court was advised, for the sole purpose of impeaching the witness by showing his previous contrary statements. But, so far as the evidence discloses, there was no contradiction between the statements and his cross-examination. He was exhaustively cross-examined by two able counsel, and freely admitted that he did not name Gordon or MacLeod in the statements first made to the F. B. I. Had they been produced, showing, in this respect, the very fact to which he testified, they would not have amounted to impeachment and would not, therefore, have been admissible. Under

these circumstances, we think the court did not abuse its discretion.

In U. S. v. Krulewitch, 2 Cir., 145 F.2d 76, 156 A.L.R. 337, cited in this connection by defendants, the decision was limited to a situation where the document definitely contradicted the witness' testimony. Here, in contrast, there is nothing to suggest any such impeaching value in the statements in question. See U. S. v. Ebeling, 2 Cir., 146 F.2d 254; U. S. v. Walker, 2 Cir., 190 F.2d 481.

Nor were the statements relevant because of the mere fact that the witness had made them. He had not used them in testifying; he had not referred to them to refresh his recollection. "The better rule [is] that where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them." Goldman v. U. S., 316 U.S. 129, 132, 62 S.Ct. 993, 995, 86 L.Ed. 1322. It should be observed also that the Supreme Court in the case cited held that whether the government's files must be produced should in general be a matter for the determination of the trial judge. See also D'Aquino v. U. S., 9 Cir., 192 F.2d 338.

Another aspect of defendants' cross-examination of Marshall requires consideration. It will be recalled that the witness had, on August 14, 1950, entered a plea of guilty before the District Court in Detroit, and that his case was then assigned to the Probation Officer for investigation. At the time of the trial no final disposition of that cause had been made.

On cross-examination it was brought out that the witness was an accomplice; that he had pleaded guilty to the same offense in the United States District Court in Michigan; that, though he had entered his plea some months before he testified in this trial, he had not yet been sentenced. He was interrogated at length concerning any promises of reward, leniency or consideration. The details appear in the footnote.[1] He testified that the United

---

1. The questions asked and answered by Mr. Marshall on cross-examination bearing upon this issue were in substance as follows:

"Q. Had Mr. Scheer (the prosecuting attorney) promised you any immunity for your testimony which you were to give

States Attorney had not communicated to him and that his own attorney had not reported to him any promises that he would receive leniency or reward of any kind; that neither the United States Attorney nor any other person had, in the present case, made promises of any character to induce him to testify and that his own attorney had advised him not to do so.

After an extended cross-examination, defendants offered to prove that when he pleaded guilty in Detroit, the District Judge asked him, in open court, whether "anyone had promised him anything," to which he responded, "no"; "that he had not been forced to plead guilty"; that, thereupon, the court said, "very well, the plea of guilty is accepted. I am going to refer your case to the probation department for pre-sentence report. I think I should say to you, as I said to your attorney yesterday, * * that it seemed to me that if you intended to plead guilty and expected a recommendation for a lenient sentence or for probation, it would be essential that you satisfy the probation department that you have given the authorities all the information, * * *. I am not holding any promises for you, but I think you would be well advised to tell the probation authorities the whole story even though it might involve others." It was this evidence which the court refused to admit.

We do not see in the proffered proof any-

"Q. Did you tell the District Judge in Detroit after you entered your plea of guilty that you were not guilty? A. I told him I was not guilty of receiving stolen property with the knowledge it was stolen.

\* \* \* \* \* \*

"Q. You are not a defendant in this proceeding? A. No, sir.

"Q. The only proceedings in which you were a defendant was in Detroit? A. That is right, sir.

"Q. It is over nine months now that your plea in Detroit has been pending and is undisposed of and you have not been sentenced, * * have you? A. No, sir.

"Q. There is not even a date set for your sentence? A. I don't believe so.

\* \* \* \* \*

"Q. Is this a certified copy of the information to which you pleaded guilty in Detroit before Judge Levin? A. I believe it is.

\* \* \* \* \* \*

"Q. You have stated on cross-examination that you have not been given any promises for your testimony? A. That is right.

"Q. Nor any promise of any immunity or reward, is that true? A. That is true.

"Q. But you have not been sentenced? A. No, sir.

"Q. Have you been given any threats in connection with testifying here? A. No, sir.

\* \* \* \* \* \*

"Q. You have cooperated with the F. B. I. in this matter since your plea, have you not? A. I think so.

"Q. You think so, that is, you have done what they have requested you to do? A. Yes, sir."

in any later proceedings? A. No, there was never any promise.

"Q. Had Mr. Schwartz (the witness's counsel) communicated to you any promise that had been given him by Mr. Scheer or the United States Attorney? A. There was no promise.

"Q. Do you know whether Mr. Smith made any promises to your counsel? A. Not that I know of.

"Q. Did Mr. Schwartz communicate any such promise to you? A. No, he did not.

"Q. Do you hope by your testimony here to get off easy in your case in Detroit? A. No sir.

"Q. You have no hope of that at all? A. No sir.

"Q. And you are not just trying to do the best for yourself here on the witness stand, are you? A. No.

\* \* \* \* \* \*

"Q. Did Mr. Downing tell you that if you testified favorably in this case that he would suggest to the probation department in Detroit, that you would receive favorable consideration? A. No.

"Q. Did anybody in the United States Attorney's Office in Chicago make that suggestion to you? A. No.

"Q. Did Mr. Mehegan or Mr. McCormick say anything like that to you? A. No.

"Q. And you have no hope of immunity or reward for the testimony you are giving in this courtroom? A. No, sir.

"Q. Did any person whomsoever suggest to you that if you cooperated with the authorities in this case and testify against others, you would receive consideration? A. No, sir. My attorney told me not to testify.

\* \* \* \* \* \*

thing of substantial interest to defendants beyond what had been brought out in Marshall's cross-examination. It had been proved that he had not yet been sentenced, that his case had been delayed for presentence investigation, and that he had not up to that time involved either defendant. The offered proof amounted merely to what had already been admitted by the witness, all of which was undisputed. If there was anything in the circumstances that he had pleaded guilty and had not yet been sentenced, and that he did not involve the defendants until later, which the jury considered of importance in determining his credibility, it had before it his own admissions in that respect and nothing in the transcript disputed them or added anything of substance thereto. Of course the court advised him that he would be well advised to tell the complete story. That is what any defendant or witness should do.

■ We can not believe that the failure to admit the transcript could, in the slightest degree, have prejudiced the jury which had before it the undisputed facts in this respect. Obviously, motives of a witness may be fully investigated on cross-examination, but this record reflects a most thorough cross-examination as to all Marshall's actions and motives. Obviously, likewise, the state of mind of the witness as he testified, was an important criterion of his motives, but that element of the witness' testimony had been vigorously and fully explored. The offered evidence threw no further light upon or impeached in any way what he had already said. In our view, under the circumstances, it was not prejudicial error for the court to exclude the transcript; it was not abuse of the discretion, concerning the scope and limitation of cross-examination, with which the trial court is endowed. United States v. Hornstein, 7 Cir., 176 F. 2d 217.

We have considered carefully defendants' further contentions in regard to the limitations placed upon their cross-examination of Marshall and find no prejudicial error.

Defendants' final assignment of error concerns the court's instructions to the jury, both initially and in giving a supplemental charge similar to that approved in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. Reading the entire initial instructions as a whole, United States v. Bucur, 7 Cir., 194 F.2d 297, no error appears. Though in certain instances, taken out of context, words appear which arguably were improper, these defects were cured when read in the setting which the court gave them.

■ The supplemental charge presents a slightly different problem. While it followed closely the words of the Allen decision, supra, it contained certain minor differences. Recently in United States v. Furlong, 7 Cir., 194 F.2d 1, certiorari denied, this court had occasion to approve impliedly the continued use of the instruction. The charge there complained of directed the jury to examine the question with candor "and with a proper regard and deference to the opinions *of each other*" (emphasis supplied) as did the charge in the Allen case. Here, instead of the words italicized, there appear in the transcribed charge the phrase "of others." This difference, assert defendants, is vital, for, by virtue of it, the jury was advised to consider the opinions of other persons. We think the criticism over-meticulous and devoid of substance. The charge made it crystal clear that the jurors should consider the opinions of each other and make every reasonable effort possible to reconcile any differences. They were advised that it was their convictions, i. e., those of each of the panel, based upon the evidence, which should control and that the opinions of no witness and of no counsel was of the slightest importance or relevance. They could not have possibly been misled.

■ The court added also that the case "must at some time be decided." Strictly speaking, this was not true, for it is possible that no jury would ever agree. However we think the language was far from prejudicial error, for the court expressly explained that it was the jury's duty to

decide the case, only if it could conscientiously do so.

We conclude that the court did not commit prejudicial error in its charge. However, we should observe that the Supreme Court, in the Allen case, fixed the extreme limits beyond which a trial court should not venture, in advising the jury as to its duty to attempt to agree.

The judgments are affirmed.