**William RICHARDS, Plaintiff,**

v.

**Roger SWANSON and the City of New York, Defendants.**

**No. 63 Civ. 2761 and 2762.**

United States District Court
S. D. New York.

April 19, 1968.

Joy & Hallinan, New York City, by C. Joseph Hallinan, Jr., New York City, for plaintiff.

J. Lee Rankin, Corporation Counsel, by Richard A. Hagen, Asst. Corporation Counsel, New York City, for defendants.

MEMORANDUM

POLLACK, District Judge.

This is a motion for a new trial by the plaintiff pursuant to Rule 59 of the Federal Rules of Civil Procedure following a jury verdict in favor of the defendants.

The specific grounds for plaintiff's motion are that evidence was erroneously excluded and plaintiff's opening statement was improperly curtailed. On the oral argument of the motion, it was conceded that the questioned rulings relate to discretionary control of the conduct of the trial and the present issue is whether discretion was abused.

This case concerns a plaintiff who was arrested by the defendant Swanson, a police officer of the City of New York, for assaulting him. In the criminal court, the People failed to prove the assault beyond a reasonable doubt and plaintiff was acquitted. He then brought this suit for damages for malicious prosecution against Swanson and the City of New York and the jury herein found in favor of the defendants.

Plaintiff had accosted a young lady late at night at first on the street and then followed her into the hallway of her apartment house. Swanson went to the entrance of the apartment to investigate the young lady's scream at plaintiff to "get out of here". Swanson confronted plaintiff and a fight ensued in which Swanson was punched in the eye by plaintiff requiring hospital treatment for him.

It was plaintiff's contention in explanation of what occurred that Swanson was not bent on police duty but acted to protect an amorous relationship between himself and the young lady, albeit that he was a married man with four children, and that he was separated from his wife. The plaintiff was permitted to hint broadly at this claimed relationship by various circumstances suggested by answers to permitted questions. The assignment of error is that plaintiff was not allowed to go into greater detail thereon. Plaintiff argued that this relationship went to prove that he had been struck first by Swanson and that in prosecuting plaintiff Swanson failed to reveal that alleged fact to the authorities and the Grand Jury, thereby leaving plaintiff cast in a wrong light as the aggressor.

So far as concerns the criminal prosecution, the existence or concealment of such a relationship did not adversely affect the plaintiff; he was acquitted. In this suit for malicious prosecution, brought after the acquittal in the criminal case, the competence of evidence of a motive on the part of Swanson to protect or foster a personal interest must be examined in the background of the case and the admissibility of a detailed chronicle of such relationship must be evaluated in the light of overall considerations. In United States v. Krulewitch, 145 F.2d 76, 156 A.L.R. 337, (2d Cir. 1944) Judge Learned Hand wrote that:

" * * * the competence of evidence in the end depends upon whether it is likely, all things considered, to advance the search for the truth; and

that does not inevitably follow from the fact that it is rationally relevant." (at p. 80).

In *Krulewitch,* relevant evidence was barred on the ground that "it was much more likely to divert, than to enlighten, the jury." (at p. 80).

In more detail, the facts in this case were that shortly after midnight on July 3, 1962 the plaintiff found himself walking along McDougal Street in Greenwich Village behind an attractive young lady, a stranger, whom he had noticed earlier in the evening conversing with Swanson at a bar in an establishment known as the Kettle of Fish. He attempted to strike up a conversation with her as they continued walking. Within a short distance she turned abruptly into the doorway of her apartment residence. The plaintiff paused and then went into the same building. She had reached the middle of the hallway and was about to ascend the stairs when she sensed someone behind her and was startled. She turned around and saw the plaintiff who was then inside the second doorway. She immediately asked what he was doing there and ordered him to get out. Plaintiff said his purpose was only to have a conversation with her and he offered to have coffee with her. She raised her voice and told him to "Get out of here" and said she didn't want his coffee. (Plaintiff admitted that he had no business following a strange young lady into her apartment house that late at night and he testified he had not done so on any previous occasion.) He started to leave the hallway when he was confronted by the defendant Swanson, who, claiming that he had observed plaintiff's advances to the young lady as she was walking along the street, had become suspicious of his purposes and had followed the plaintiff and then hearing the young lady cry out had hastened to the doorway of the apartment house in question. Swanson was dressed that evening in plain clothes and as a policeman he was on 24 hour call in accordance with police regulations whether or not assigned to specific duty.

Swanson testified that he asked the plaintiff what he was doing there, what was going on, and that he received the short response that it was none of his business. He replied that maybe it was his business since he was a policeman and as he reached into his back pocket to produce his shield, he was struck in the face by the plaintiff.

The plaintiff admits that he knew that Swanson was a police officer but he places the identification by Swanson of himself as a policeman at a later point. He says that when Swanson confronted him, Swanson, without identifying himself, loosed a volley of words and started grappling and punching plaintiff and the latter said he tried "to contain", "to reason with" Swanson. He says that in the struggle ensuing they emerged on the street, and plaintiff hit Swanson once or twice and only then did Swanson announce that he was a policeman, causing plaintiff to drop his hands to his side in amazement. Whereupon, says plaintiff, Swanson hit him "and the fight resumed".

Someone phoned for police, and they came in several squad cars and plaintiff was placed under arrest by Swanson, taken to the station house and booked for felonious assault (later reduced to simple assault by action of the Grand Jury).

The key issue in the trial was the issue of probable cause for the prosecution of the plaintiff for assaulting Swanson.

The jury was instructed, without exception from the plaintiff, that if Swanson had probable cause to arrest and prosecute the plaintiff for assault, it need go no further in its deliberations and should return a verdict in favor of defendants. An assault, third degree, was defined in the charge as consisting of knowingly striking a blow on another. The jury was instructed that one attacked was privileged to use in self defense reasonable force to ward off the attack; and that a person is never privileged to use force or the threat of force against mere words or to resist a lawful arrest or questioning by a police officer.

Thus, the issue of Swanson's motive in the situation was almost collateral in this case to the simple question whether the plaintiff struck a police officer knowing that he was such. As stated in the charge: "If Swanson honestly and reasonably believed that Richards had assaulted him and was not activated by malice in arresting Richards and so informed the police and the Grand Jury, which recommended that the District Attorney file a criminal information against Richards for simple assault of a police officer, then your verdict must be for the defendants".

But even assuming that Swanson's motivation in confronting the plaintiff was relevant, the plaintiff attempted to go to unfair extremes on the subject of a relationship of the police officer and the young lady; unfair prejudice and inflammatory matter were surely involved in the plaintiff's attempt to probe further than he was allowed to probe into the relationship. That in the judgment of the trial Court would have had the tendency to divert the jury from the search for the truth on the central question of probable cause for the criminal prosecution.

The plaintiff conceded on the oral argument of the pending motion that he had no evidence of an amorous relationship *in existence prior* to the controversy with the plaintiff. The plaintiff's counsel frankly admits that he was not blocked from inquiring about the existence of a relationship *prior to* the arrest; no questions whatever were asked along these lines and he was not deterred by the Court from such an inquiry.

The trial transcript shows that on his opening statement plaintiff's counsel asserted that he would show that a relationship existed *prior* to July 4th *and subsequent* to July 4th. The evidence however adduced by plaintiff was only that the two were at the same bar several hours earlier that evening; that prior to that night the policeman had not been

introduced to the young lady and had not spoken to her except to say "hello"; that he learned her full name for the first time after the arrest of the plaintiff. This was the testimony of the policeman called to the stand by the plaintiff.

The young lady, testifying for defendants, denied that she had been formally introduced to Swanson *prior* to July 3, 1962 but said that she had seen him.

The plaintiff claimed that Swanson had a relationship *subsequent* to the arrest on July 4th. In this connection he was permitted to prove that between the date of the arrest and the criminal trial, a period of over five months during which there were grand jury proceedings, Swanson visited the young lady to discuss the testimony in the criminal case "at various times". Objections were sustained by the Court to questions whether during that *subsequent period* she went out with Swanson socially, and whether he had visited her in her apartment in this period after the arrest. These rulings are claimed to constitute abuse of discretion.

It was plainly plaintiff's purpose to develop inferences of and speculation on an improper extra-marital relationship from which to attack the plaintiff as a husband, father and policeman and thereby gain a verdict from the jury on the issue on trial, viz., that there was no probable cause for and that the prosecution of the assault charge was malicious.

The plaintiff was given latitude in his examination of the witnesses sufficient to argue to the jury, as he did on summation, that Swanson was actuated by a fit of jealousy; that the young woman involved was his girl friend; that they had earlier had an argument in the Kettle of Fish; that he had been divorced; that there was more than a casual relationship afoot; and that the jury had been given enough facts from which to infer the truth.

As part of the moving papers with respect to the instant motion, plaintiff's attorney attaches a copy of a letter purportedly written while the jury was deliberating on the case, by counsel for the defendant, in which the writer states that the defendant "moved in" with the young lady for five years, *subsequent* to the events of July 3, 1962.[1] This letter would, of course, not be admissible in evidence for any purposes, but assuming the truth of its contents, it contains no admission of a relationship between the defendant and the young lady prior to July 3, the date on which defendant's motive, if any, would be relevant to explain his conduct.

Plaintiff's attorney would seek, upon a new trial, to draw an inference (of a motive to assault the plaintiff) from an inference (of an amorous relationship as of July 3) from an assumed fact (of an extra-marital relationship subsequent to July 3), assumed from the frequency of the visits and their social, not business, purpose.

The Court rejected this endeavor and properly so.[2]

It is true, as plaintiff contends, that evidence as to motive is normally admissible in a civil suit. Boston Insurance Co. v. Jensen, 259 F.2d 482 (9th Cir. 1958). On this theory, the Court permitted inquiry as to whether the defendant and the young lady knew each other prior to July 3, 1962.

1. In his affidavit in support of the instant motion, plaintiff's counsel states that he discovered the letter, written on a legal pad, to defendants' counsel's father, among the papers on the counsel table following the trial.

2. [On direct examination of the defendant Swanson by counsel for the plaintiff]: Q: Let me ask you this: Between July 4, 1962, and December 19, 1962, how many times were you in [the young lady's] apartment? Record at p. 236 [On cross examination of the young lady]: Q: Between July 4, 1962, and December 19, 1962, you went out with Roger Swanson socially, did you not? Record at p. 296.

However,

"Whether any specific fact can be introduced into evidence as the basis for a circumstantial inference involves the weighing and balancing of probative force against the counteracting policy considerations of undue prejudice, undue prolongation of the trial, confusion of issues and unfair surprise. When outweighed by these factors, a logically relevant circumstantial fact may be excluded." Fisch, New York Evidence, § 162 (1959).

■ See also Uniform Rules of Evidence (1953), Rule 45, Model Code of Evidence (1942), Rule 303. The question of whether evidence is too remote is for the Court and not the jury although it is in essence one of fact. People v. Feldman, 299 N.Y. 153, 85 N.E.2d 913 (1949).

■ The Court, therefore, was not required to permit inquiry into the *nature* of a prior relationship, the very existence of which was denied, or to permit cross examination as to the details of a relationship between Swanson and the young lady commencing subsequent to July 3, 1962, merely because it had relevance. The Court was not required to apply a mechanical rule of evidence, but rather to balance

" * * * the actual need for the * * * evidence in the light of the issues and the other evidence available * * * the convincingness of the evidence * * * and the strength or weakness of the * * * evidence in supporting the issue, and * * * the degree to which the jury will probably be roused by the evidence to overmastering hostility."

"The lee-way of discretion * * * empower[s] the judge to exclude * *

evidence, even where it has substantial independent relevancy, when in his [the trial Judge's] judgment its probative value * * * is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of [the issues] * * * on trial." McCormick, Law of Evidence (1954), pp. 332–333.

This balancing process clearly justifies the exercise of discretion in the instant case. The "actual need" for evidence of the *nature* of the relationship, particularly where the existence of a prior relationship was in effect denied by the defendant and the young lady was minimal; "in the light of the issues and other evidence available" its relevance was slight, and its potential for misleading great. Its "strength" was suspect in the light of the defendant's denial, being limited to the impression which the questions put by counsel for the plaintiff would have had on the minds of the jury. The jury would, quite possibly, have been roused to "overmastering hostility." In short, the "probative value" of the excluded evidence was "outweighed by the danger" of prejudice to the defendants.

In the opinion of the undersigned having seen and heard the witnesses as the trial Judge, the jury's verdict and the result of the trial are consonant in all respects with substantial justice. The motion is in all respects denied.

The defendants cross-moved for an order pursuant to Rule 7(b) of the Federal Rules of Civil Procedure to strike the affidavit of plaintiff's attorney in support of the motion for a new trial. In view of the foregoing determination the cross-motion may be treated as moot and accordingly is denied.

So ordered.